AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Six Target Locations and One Target Vehicle, as<br>further described in Attachments A1-A7 | )<br>)<br>)  Case No. MJ23-356<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachments A1-A7, attached hereto and incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), and 846;<br>and 18 U.S.C. §§ 1956(a) and (h) | Distribution and/or Possession of Controlled Substances with Intent to Distribute;<br>Conspiracy to Distribute Controlled Substances; Laundering of, Conspiracy to Launder,<br>Monetary Instruments. |

The application is based on these facts:

✓   See Affidavit of DEA TFO Christopher L. VandenBos, continued on the attached sheet.

☐   Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Christopher L. VandenBos, TFO, DEA
*Printed name and title*

◯ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:  _____07/14/2023_____          _____
                                                                          *Judge's signature*

City and state:  Seattle, Washington          Hon. Brian A. Tsuchida, United States Magistrate Judge
                                                                          *Printed name and title*

USAO# 2022R01285

**AFFIDAVIT OF CHRISTOPHER L. VANDENBOS**

STATE OF WASHINGTON      )

                                )

COUNTY OF WHATCOM      )

I, Christopher L. VandenBos, being first duly sworn on oath, depose and say:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7) and a "general authority Washington peace officer" within the definition of RCW 10.93.020. Specifically, I am a commissioned Sheriff's Deputy with the Whatcom County Sheriff's Office. I have been employed by the Whatcom County Sheriff's Office since June 2015. In that capacity, I investigate violations of the Revised Code of Washington (RCW). In January 2019, I assumed the role of a Narcotics Detective with the Whatcom Gang and Drug Task Force, with the focus of my responsibilities including the investigation of mid to upper-level drug traffickers.

2.      I am also a Task Force Officer with the Drug Enforcement Administration ("DEA"), assigned to the Bellingham, Washington Resident Office. In that capacity, I investigate violations of the Controlled Substances Act (Title 21, United States Code, Section 801, *et seq*.). I have been assigned as a Task Force Officer with the DEA since January 2019. During my time conducting investigations with the DEA, I have written and sworn to multiple federal and state search warrants and orders related to the installation of pen registers, trap and trace, and real-time location information for mobile devices. I have written multiple state and federal search warrants for data stored by social media platforms, and am familiar with the technologies used by Facebook, Instagram, Snapchat, Google, and other companies, and how it relates to tracking an individual's movement, either live or historical.

3.      I have completed the Undercover Techniques and Survival for Narcotics Officers School hosted by the Western Regional Counterdrug Training Center, a forty-hour Criminal Investigations Using Cellular Technologies course hosted in Las Vegas, Nevada, a twenty four hour Fugitive Mission Planning and Cellular Investigative Techniques course hosted in Bellingham, WA, a forty-hour DEA Task Force Officer School hosted in Quantico, Virginia, and other training courses related to criminal street gangs, narcotics trafficking, electronic surveillance, money laundering, and fentanyl-related overdose deaths. I have completed hundreds of hours of law enforcement related training, to include investigatory techniques, surveillance, evidence collection, cell phone technology, and other topics.

4.      As a Whatcom County Sheriff's Office Deputy, I have participated in multiple death investigations, including homicide, overdose, and natural death investigations. I have participated in fugitive operations spanning multiple states, and have used my training and experience as it relates to electronic evidence to capture wanted subjects who were fleeing from law enforcement.

5.      Based on my training and experience, I have become familiar with the techniques and methods used by drug traffickers to distribute controlled substances, their use of vehicles, their use of cellular phones and other electronic communication devices to facilitate their trafficking activity, and the methods used to conceal and launder the proceeds of drug trafficking. I have participated in hundreds of hours of surveillance on narcotics traffickers. I have examined narcotics related pay/owe ledgers, supplier lists, and cell phone content, and understand how they are used in relation to drug sales and trafficking. During the course of my employment, I have served search warrants and conducted narcotics-related interviews in Washington and other states, and have discussed drug trafficking and money laundering trends with members of federal and state law enforcement from across the United States, as well as those working in other countries.

Affidavit of TFO VandenBos - 2
USAO# 2022R01285

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

6.    I have experience acting in an undercover capacity. I have purchased controlled substances such as fentanyl-laced pills, fentanyl-laced powder, cocaine, heroin, and methamphetamine while acting in an undercover capacity. While acting in an undercover role, I have arranged narcotics transactions, discussed counter-surveillance methods to avoid law enforcement, and discussed prices, quantity, and quality of various controlled substances.

7.    I have attended a course instructed by the Royal Canadian Mounted Police (RCMP) Clandestine Laboratory Enforcement and Response team, which discussed topics on synthetic drug manufacturing, including information regarding fentanyl in powder and pill form. During that training, I participated in a pill encapsulating demonstration using a pill press and other equipment.

8.    In 2014, I obtained a Bachelor of Arts (BA) from Western Washington University in Sociology, with an emphasis in Criminology. During that time, I completed research courses involving Mexico-based drug trafficking networks, statistics, and data analytics. I also obtained a minor degree in Spanish Language.

9.    I speak Spanish at the conversational level. I have used Spanish to interview confidential informants, witnesses, and suspects during the course of state and federal narcotics investigations. In my role as a Task Force Officer with the Drug Enforcement Administration, I have participated in Title III wiretap investigations, and have monitored live phone intercepts between Spanish-speaking drug traffickers. While monitoring these phone intercepts, I have spoken with certified Spanish translators, who have further explained common slang terms, expressions, and code words used by drug traffickers for narcotics-related language and terms.

10.    I have training and experience as it relates to the blue "M 30" stamped fentanyl-laced pills mentioned in this Affidavit. I have been involved in the seizure of thousands of similar fentanyl-laced pills, and have submitted such pills for testing to various laboratories. I have reviewed laboratory analysis reports from both the Drug

AFFIDAVIT OF TFO VANDENBOS - 3
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Enforcement Administration (DEA) and Washington State Patrol (WSP) laboratories, which have indicated the presence of fentanyl in similar pills. I know, based on training and experience, that similar suspected fentanyl-laced pills are commonly manufactured by clandestine laboratories in Mexico, and subsequently smuggled in the United States for redistribution and consumption. I have spoken with multiple confidential sources who have admitted to the prior use of similar fentanyl-laced pills, and have testified to their narcotic effect.

### PURPOSE OF THIS AFFIDAVIT

11.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the following premises, described in Attachments A1-A7 to this Affidavit, for the property and items described in Attachment B to this Affidavit, as well as any digital devices or other electronic storage media located therein:

a.     **Target Location 1 (TL1): 6069 Neevel Road, Ferndale, WA 98248**: Target Location 1, as further described in Attachment A1, is located at 6069 Neevel Road, Ferndale, WA. Target Location 1 is a white travel trailer with thin dark stripes running laterally along the sides. There are two doors facing east. There is a green staircase leading to one of the doors.

b.     **Target Location 2 (TL2): 1401 Woodstock Way, Unit #102H, Bellingham, WA 98226**: Target Location 2, as further described in Attachment A2, is an apartment labeled #102H, located at 1401 Woodstock Way, Bellingham, WA. Target Location 2 is located within a multi-unit residential complex that is tan in color with white trim. The door for unit 102-H is located on the south side of the residential complex, facing south. Unit 102-H is located on the first floor and the numbers reading "102-H" are affixed to the door. The door is white in color. There is an affixed Patio with a white railing on the north side of the complex for unit 102-H.

Affidavit of TFO VandenBos - 4
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

c.      **Target Location 3 (TL3): 966 E. 69th Vista, Apt. 7, Lynden, WA 98264**: Target Location 3, as further described in Attachment A3, is located at 966 E. 69th Vista, Apt. 7, Lynden, WA. Target Location 3 is a one-story single-family residence. The residence is tan in color with white trim, and composite roof. The residence appears to have a covered front door/entrance on the west side of the residence. The residence has a driveway, with access from the south, off E. 69th Vista. The number "7" is affixed to the south side of the residence in two separate locations, are both black in color, and visible from the driveway.

d.      **Target Location 4 (TL4): 4238 Northwest Drive, Bellingham, WA 98226:** Target Location 4, as further described in Attachment A4, is located at 4238 Northwest Drive, Bellingham, WA. Target Location 4 is a one-story single-family residence, with what appears to be an unattached outbuilding to the north. The residence is grey in color with white trim, and composite roof. The residence has a covered front door/entrance located on the west side of the residence. The residence has a driveway with access from the east side of Northwest Drive. The numbers "4238" are affixed to the front of the actual residence, on the west side, and visible from the driveway as you enter the property. The numbers "4238" are white in color.

e.      **Target Location 5 (TL5): 2412 Rimland Drive, Apt. 410, Bellingham, WA 98226:** Target Location 5, as further described in Attachment A5, is located at 2412 Rimland Drive, Apt. 410, Bellingham, WA. Target Location 5 is a fourth-floor apartment located within the Trailview Apartment building, located at 2412 Rimland Drive, Bellingham, WA. Target Location 5 is an apartment assigned number 410. There is a placard affixed to the left side of the front door that reads "410" in vertically descending numbers. The door front door has a grey metal door handle on the left side of the door.

f.      **Target Location 6 (TL6): 1820 East Pole Road, Everson, WA 98247:** Target Location 6, as further described in Attachment A6, is located at 1820 East Pole Road, Everson, WA. Target Location 6 is a property located at 1820 East Pole Road,

AFFIDAVIT OF TFO VANDENBOS - 5
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Everson, WA. According to the Whatcom County Assessor website, the parcel number is 3903021580280000. There is a single-story residence on the property with brown siding. On the south side of the residence, there are white numbers showing "1820" affixed to the siding. There is a shop on the property with green metal siding and a green door. There are multiple trailers and vehicles within the boundary of the property.

g.     **Target Vehicle 3 (TV3): A blue 2006 Chevrolet Cobalt:** Target Vehicle 3, as further described in Attachment A7, is a 2006 Chevrolet Cobalt, with Vehicle Identification Number (VIN) 1G1AK15F967805540.[1]

12.    For each of the Target Locations, authority to search extends to all parts of the property, including main structure, garage(s), storage structures, outbuildings, and curtilage, and all vehicles, containers, compartments, or safes located on the property, whether locked or not, where the items described in Attachment B could be found. For each Target Location described as an apartment, authority to search extends to all storage areas associated with the apartment, including on-site storage lockers, garages, and parking stalls. For each Target Vehicle, authority to search extends to all parts of the vehicle and any cases, containers, compartments, or safes located in the vehicle, whether locked or not, where the items described in Attachment B could be found.

13.    The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of cooperating witnesses; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

---

[1] Investigators have observed that this vehicle has had multiple Washington State registrations, with at least three different Washington license plates, during the period of this investigation. The most recent registration for this vehicle was issued on May 30, 2023, and the Washington license plate associated with this most recent registration is CHH1986.

AFFIDAVIT OF TFO VANDENBOS - 6
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

14.     Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits and instrumentalities of violations of Title 21, United States Code, Section 841(a)(1); conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and/or laundering of, or conspiracy to launder, monetary instruments in violation of Title 18, United States Code, Sections 1956(a) and (h), will be found at the Subject Premises and within the Subject Vehicle.

## SOURCES OF INFORMATION

15.     I make this Affidavit based upon personal knowledge derived from my participation in this investigation and upon information I believe to be reliable from the following sources, which include but are not limited to:

a.     My training and experience investigating drug trafficking and related criminal activity, as described above;

b.     Oral and written reports and documents about this and other investigations that I have received from agents of the DEA, the Whatcom County Sherriff's Office (WCSO), the Lynden Police Department (LPD), and other federal, state and local law enforcement agencies;

c.     Physical and digital surveillance conducted by the aforementioned agencies, and other law enforcement agencies, that has been reported to me directly or indirectly;

d.     Telephone toll records, pen register and trap and trace information, and subscriber information;

e.     Washington State Department of Licensing records;

f.     Commercial databases;

g.     Public records; and

AFFIDAVIT OF TFO VANDENBOS - 7
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

h.    Publicly viewable information on social media websites (*i.e.*, Facebook, Instagram).

16.    In the following paragraphs, I describe communications between various individuals. Except where specifically indicated with quotation marks, the descriptions are summaries of the conversations and are not meant to reflect the specific words or language used.

## THE INVESTIGATION

### Summary of Investigation

17.    The United States, including the Drug Enforcement Administration and the Whatcom County Sheriff's Office (WCSO), are conducting a criminal investigation into Perfecto BARRAGAN MENDEZ, Gabriel BARRAGAN CHAVEZ, Jesus Geovanny MONREAL BOJORQUEZ, Jose Manuel COTA GOMEZ, Christopher GARCIA, Joel ARMENTA LOPEZ, and others, regarding violations of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. §§ 1956(a) and (h).

18.    Investigators believe that the subject drug trafficking organization ("DTO") is distributing fentanyl in Whatcom County, WA. Investigators believe that the DTO is using a network of stash houses, dispatchers, money launderers, and drug couriers to distribute fentanyl to customers in Whatcom County, WA. Investigators believe drug customers in Whatcom County, WA, communicate with a dispatcher, who investigators believe is based in Mexico, to order controlled substance. Investigators believe that once an order is placed using either a social media account or phone communication, a courier based in Whatcom County, WA, meets with the customer to fulfil the order and accept payment on behalf of the DTO.

19.    Specifically, investigators have identified the following DTO members who investigators believe are engaged in the drug trafficking and money laundering conspiracy:

a.    **Jose COTA GOMEZ** is suspected of acting as a drug courier by delivering controlled substances and accepting payments at the direction of a dispatcher in

Mexico. Jose COTA GOMEZ is suspected of living at **Target Location 1** and **Target Location 5**, as well as selling drugs from **Target Location 2**. Investigators have not identified a Washington State identification for COTA GOMEZ.

  b.  **Jesus MONREAL BOJORQUEZ** is suspected of acting as a drug courier by delivering controlled substances and accepting payments at the direction of dispatcher in Mexico. Jesus MONREAL BOJORQUEZ is suspected to be living at **Target Location 6**. According to the Washington State Department of Licensing, MONREAL BOJORQUEZ has a listed residential address at **Target Location 1**, last updated on July 7, 2023. Prior to that date, MONREAL BOJORQUEZ had **Target Location 6** listed as his residential address.

  c.  **Perfecto BARRAGAN MENDEZ** is suspected of acting as a facilitator for the DTO by transporting drugs, renting hotel rooms, re-registering vehicles, and laundering money on behalf of the organization. Investigators believe Perfecto BARRAGAN MENDEZ has resided at **Target Location 3**. According to the Washington State Department of Licensing, BARRAGAN MENDEZ has a listed residential address at **Target Location 3**, last updated on August 6, 2022.

  d.  **Gabriel BARRAGAN CHAVEZ** is suspected of acting as a facilitator for the DTO by transporting drugs, registering and re-registering vehicles used by members of the DTO, and laundering money for DTO. Investigators believe BARRAGAN CHAVEZ resides at **Target Location 3** and has repeatedly used **Target Location 4** as an address to register vehicles. According to the Washington State Department of Licensing, BARRAGAN CHAVEZ has a listed residential address at **Target Location 4**, last updated on February 24, 2021.

  e.  **Antonio BARRAGAN CHAVEZ** is suspected of acting as a facilitator for the DTO by allowing his address, **Target Location 4**, to be used as an address to register and re-register vehicles used by the DTO to distribute controlled substances. Antonio BARRAGAN CHAVEZ is also suspected of assisting members of the DTO to

Affidavit of TFO VandenBos - 9
USAO# 2022R01285

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

lease a rental property, **Target Location 2**, which is being used to distribute controlled substances. Investigators suspect, based on the frequent use of **Target Location 4's** address, as well as Antonio BARRAGAN CHAVEZ's role as a co-signer for **Target Location 2**, that Antonio BARRAGAN CHAVEZ may be a higher-ranking member of the DTO. According to the Washington State Department of Licensing, Antonio BARRAGAN CHAVEZ has listed his residential address as **Target Location 4**, last updated on February 20, 2021.

20.    During the investigation law enforcement has observed multiple runners conducting drug transactions (or suspected drug transactions), using several of the same vehicles. Of note, the registration for these vehicles has been repeatedly changed.[2] Furthermore, as demonstrated by the table below, Perfecto BARRAGAN MENDEZ and Gabriel BARRAGAN CHAVEZ, two of the principal targets of this investigation, have each been the registered owner of Target Vehicles 1-3, at **Target Locations 3 or 4**, during the period of this investigation:

| Vehicle | License | Date Observed | Registered Name | Registered Address |
|---------|---------|---------------|-----------------|--------------------|
| TV1 | CEM9917 | 11/05/2022 | Perfecto BARRAGAN MENDEZ | 966 E. 69th Vista, Apt. 7, Lynden, WA (**Target Location 3**) |
| TV1 | CEN1644 | 12/08/2022 | Gabriel BARRAGAN CHAVEZ | 4238 Northwest Drive, Bellingham, WA (**Target Location 4**) |
| TV2 | CAJ2393 | 12/29/2022 | Harrison Olvera | 3232 Pine Road NE, Apt. A307, Bremerton, WA |
| TV2 | CFT2201 | 01/03/2023 | Gabriel BARRAGAN CHAVEZ | 966 E. 69th Vista, Apt. 7, Lynden, WA |

[2] Based on my training and experience, individuals that engage in the illicit distribution of controlled substances will sometimes re-register the same vehicle under a new name and with a new address. This tactic is referred to as "title-flipping" and is used as a means of evading law enforcement detection. Moreover, based upon my training and experience, the short term and frequent re-registrations of a vehicle indicates that the vehicle is owned by an organization, and not the individual registrant of the vehicle.

AFFIDAVIT OF TFO VANDENBOS - 10
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | | | (**Target Location 3**) |
|---|---|---|---|---|
| TV2 | CFT3246 | 01/12/2023 | Luis Barbosa Ortiz | 1820 E. Pole Road, Everson, WA (**Target Location 6**) |
| TV2 | CHG8071 | 04/10/2023 | Sebastian CANO FRANCISCO | 2010 Front Street, Trailer 6, Lynden, WA |
| TV2 | CHG9547 | 04/18/2023 | Perfecto BARRAGAN MENDEZ | 966 E. 69th Vista, Apt. 7, Lynden, WA (**Target Location 3**) |
| **TV3** | CBZ2761 | 11/06/2022 | Andres Felipe Matias Jeronimo | 808 W 2nd Street, Apt. A, Nooksack, WA |
| **TV3** | CHG8098 | 04/18/2023 | Perfecto BARRAGAN MENDEZ | 966 E. 69th Vista, Apt. 7, Lynden, WA (**Target Location 3**) |
| **TV3** | CHH1986 | 05/31/2023 | Gabriel BARRAGAN CHAVEZ | 4238 Northwest Drive, Bellingham, WA (**Target Location 4**) |
| TV4 | 486YWO | 06/13/2023 | Lonnie and Jean McGee | 7035 S 133rd Street, Unit A200, Seattle, WA |
| TV4 | CHH2877 | 07/06/2023 | Kelsey Winifred Slowey | 5914 Roberts Road, Bellingham, WA |

Traffic Stop of Joel ARMENTA LOPEZ on November 5, 2022

21.     On November 5, 2022, a Lynden Police officer conducted a traffic stop of a gold 1999 Toyota Camry, bearing Washington license plate CEM9917 (hereafter "TV1"), for suspected driving under the influence (DUI). While attempting to stop TV1, the Lynden police officer saw unknown items/objects being thrown from the passenger side of the vehicle. Officers later located a large quantity of pills suspected of containing fentanyl in the area where items had been observed being thrown. Upon stopping TV1, officers identified the driver and sole occupant of TV1 as Joel ARMENTA LOPEZ. According to a search of a Washington DOL database, TV1 was issued Washington license plate

AFFIDAVIT OF TFO VANDENBOS - 11
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

CEM9917 on October 19, 2022, and was registered to Perfecto BARRAGAN MENDEZ at 966 E. 69th Vista, Apt. 7, Lynden, WA (**TL3**).

22.     After being provided *Miranda* warnings, ARMENTA LOPEZ told officers that he was staying at the Lynden Windmill Inn and that there would be cash and a large amount of fentanyl pills/narcotics in his hotel room. ARMENTA LOPEZ further stated that he had recently been moved to the area to sell drugs in Whatcom County, WA. ARMENTA LOPEZ said he worked for a male in Mexico who directed him over the phone to meet with local customers. ARMENTA LOPEZ further stated that he had previously delivered, on multiple occasions, 200 to 300 fentanyl pills to an individual that he knew as "Ricky."

23.     At the time ARMENTA LOPEZ was arrested, there was a GPS route that was active on one of ARMENTA LOPEZ's phones. The destination address was at, or in the immediate vicinity of 1820 E. Pole Road, Everson, WA, i.e., the address for **Target Location 6**. The contact in ARMENTA-LOPEZ's phone associated with this address was "Ricky." As explained further herein, **Target Location 6** is a location with which investigators are familiar based upon historical and recent drug related activity.

24.     ARMENTA LOPEZ consented to a search of TV1. Law enforcement located two cell phones, a suspected drug ledger notebook, a bag of suspected fentanyl-laced pills, and plastic baggies. Law enforcement also located a bank receipt showing a cash deposit receipt for $5,000 from around November 2, 2022. The bank account receipt showed the account was under the name "Perfecto Barragan Mendez" with an address of 966 E. 69th Vista, Apt. 7, Lynden, WA (**TL3**).

25.     In TV1, investigators also located two vehicle registrations that did not appear to belong to TV1 in the vehicle. One registration was for a 1997 Honda Accord (WA/CEE8910). The registration listed the registered owner as Jesus BARRAGAN CHAVEZ at 4238 Northwest Drive, Bellingham, WA, i.e., the address for **Target Location 4**.

AFFIDAVIT OF TFO VANDENBOS - 12
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

26.     ARMENTA LOPEZ consented to the search of the four devices seized from TV1 and the hotel room. Investigators later reviewed information found in some of those devices. Specifically, investigators found a WhatsApp message thread with a Mexico pre-fixed phone number on one of the devices. In that message thread, investigators saw photographs of several money remittance receipts. Investigators saw one receipt dated October 31, 2023, that listed the sender as "Gabriel BARRAGAN HERNANDEZ"[3] with an address of 3010 Ferry Avenue, Bellingham, WA. That receipt was for $1,615. Investigators saw another remittance receipt from October 30, 2022, with a sender listed as "Perfecto BARRAGAN MENDEZ" at 1674 Dodder Drive, Los Banos, CA. That receipt was for $1,480. Both receipts listed recipients in Mexico.[4]

27.     ARMENTA LOPEZ consented to the search of his hotel room at the Windmill Inn (Room 14). During the search of ARMENTA LOPEZ's room, officers located approximately 25,000 blue pills suspected of containing fentanyl, approximately 150 grams of suspected fentanyl powder, two cellphones, and $13,228 in United States currency. Investigators later received a report from a DEA laboratory which confirmed the presence of fentanyl in the seized pills. Investigators have not yet received forensic testing results for the suspected fentanyl powder.

<u>Information Received from the Windmill Inn</u>

28.     After the traffic stop of ARMENTA LOPEZ on November 5, 2022, a police officer with the Lynden Police Department spoke with the managers of the Windmill Inn, where ARMENTA LOPEZ had been staying. Law enforcement was advised by hotel staff

---

[3] Based upon the investigation to date, investigators believe that this may be another name used by Gabriel Barragan Chavez. However, investigators have not been able to confirm this belief.

[4] Based on my training and experience, as well as information obtained in this investigation, I believe the deposit receipts located in TV1 and photographed in the cell phone relate to the transfer and laundering of illicit drug proceeds. Specifically, I know that Mexico-based DTOs use facilitators in the United States to receive/collect drug proceeds. Once the facilitators receive drug trafficking proceeds in the United States, they transfer these proceeds—via bank transfer, money remitting services, and/or smuggled bulk cash—to other DTO members.

AFFIDAVIT OF TFO VANDENBOS - 13
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that ARMENTA LOPEZ had checked in on November 5, 2022. A manager advised that ARMENTA LOPEZ had been accompanied by another male when ARMENTA LOPEZ was checking into the room. That male had left once he and ARMENTA LOPEZ had obtained a room.

29.    A Lynden Police officer returned to the Windmill Inn to speak further with managers on November 6, 2022. The officer was provided with additional information. Managers showed the officer scanned copies of identification cards for Perfecto BARRAGAN MENDEZ and Christopher GARCIA. Hotel staff said that after law enforcement had left the Windmill Inn on November 5, 2022, Perfecto BARRAGAN MENDEZ had come to the Windmill Inn. BARRAGAN MENDEZ requested to pick up items from ARMENTA LOPEZ's hotel room. Hotel staff said Christopher GARCIA had also come to the Windmill Inn, claiming to be ARMENTA LOPEZ's brother. GARCIA also asked to retrieve something from ARMENTA LOPEZ's room.

30.    Investigators suspected that GARCIA and BARRAGAN MENDEZ had been attempting to retrieve the drugs and/or U.S. currency from ARMENTA LOPEZ's hotel room.

31.    Hotel staff showed law enforcement a license plate number (WA/CBZ2761) that they had written down and that they indicated was associated with BARRAGAN MENDEZ. When law enforcement queried the license plate in law enforcement databases, they learned that the plates belonged to a 2006 Chevrolet Cobalt registered to "Andres MATIAS JERONIMO" at an address in Nooksack, WA. The vehicle had a VIN listed as 1G1AK15F967805540, i.e., the VIN for **TV3**.

Surveillance of TV1 on December 8, 2022

32.    On December 8, 2022, at 1:00 pm,[5] investigators saw TV1 arrive at a gas station near Lynden, WA. Investigators observed a Hispanic male, later identified as Jesus

---

[5] All drug amounts, money amounts, and times provided in this affidavit are approximate.

Geovanny MONREAL BOJORQUEZ,[6] driving TV1. Investigators noticed that TV1 was bearing a new license plate, Washington license plate CEN1644. According to Washington Department of Licensing, TV1 had been issued license plate CEN1644 on November 26, 2022. This new registration for TV1 was to Gabriel BARRAGAN CHAVEZ at 4238 Northwest Drive, Bellingham, WA (**TL4**).

33.     Investigators watched as TV1 parked next to a gold 2000 Lexus SUV bearing Washington license plate CCV2018. According to Washington DOL, the gold Lexus was registered to Raymond Lee ROBISON at 316 S. Washington Street, Everson, WA.

34.     Moments after the arrival of TV1, investigators observed a Caucasian male, later identified as Daniel John FAIX via a Washington DOL photograph, exit the front passenger door of the gold Lexus. FAIX was carrying what appeared to be a cellular phone, a water bottle, and a small tan leather handbag. Investigators observed FAIX walk up to TV1 and enter the vehicle via the front passenger door. FAIX is known to investigators as a local drug dealer in Whatcom County with criminal history that includes controlled substance violation convictions in 2004, 2005, 2008, 2011, 2013, and 2015.

35.     At 1:22 pm, investigators observed a male later identified as Raymond Lee ROBISON sitting in the driver's seat of the gold Lexus. Investigators identified ROBISON via a Washington DOL photograph. A criminal history check of ROBISON revealed that in 2013, in Whatcom County, he was convicted for possession of a controlled substance without prescription. ROBISON also has additional arrest history relating to the unlawful possession of controlled substance(s).

36.     At 1:24 pm, investigators observed FAIX exit the front passenger door of TV1 and walk back to the front passenger side of the gold Lexus. Investigators later

---

[6] On December 14, 2022, investigators positively identified the driver of TV1 as Jesus Geovanny MONREAL BOJORQUEZ via an immigration booking photo.

observed, via surveillance photographs, that FAIX was carrying a large item, or items, in his front sweater pocket after exiting TV1.

37.     Based on my training and experience, the events observed by investigators on December 8, 2022, were indicative of an illicit drug transaction involving Jesus Geovanny MONREAL BOJORQUEZ, the driver of TV1, and Daniel John FAIX. After the suspected drug transaction between MONREAL BOJORQUEZ and FAIX, investigators followed TV1, driven by MONREAL BOJORQUEZ, to 6069 Neevel Road, Ferndale, WA (**TL1**).

38.     Furthermore, on December 28, 2022, FAIX was contacted by law enforcement during a separate drug investigation in Bellingham, WA. That contact involved the seizure of approximately 4,000 blue pills marked "M" on one side and "30" on the other side. Most of the blue pills seized from FAIX during this law enforcement contact were seized from FAIX's person.

39.     On March 30, 2023, a federal arrest warrant was issued for Daniel FAIX by the Honorable Mary Alice Theiler, U.S. Magistrate Judge for the Western District of Washington. FAIX was arrested by federal investigators on April 4, 2023. During his arrest, a search warrant was served on a motor home associated with FAIX, which resulted in the seizure of large quantities of suspected methamphetamine, suspected fentanyl, U.S. currency, as well as multiple firearms. During a post-*Miranda* interview, FAIX told investigators that one of his sources of drug supply was a Facebook account under the name "Juan." FAIX said he would order drugs from "Juan" in Mexico, who would then dispatch a local courier to deliver the drugs.

Identification of Target Vehicle 2 on December 29, 2022

40.     On December 29, 2022, at 8:13 am, investigators observed a light green 2005 Mazda 6 (hereafter "Target Vehicle 2" or "TV2") parked in between TV1 and a travel trailer located on the west side of 6069 Neevel Road, Ferndale, WA (**TL1**). Investigators observed TV2 bearing Washington license plate CAJ2393. According to Washington State

Department of Licensing, TV2 was registered to Harrison Olvera at 3232 Pine Road NE, Apt. A307, Bremerton, WA.

41.    At 1:18 pm, investigators observed TV2 depart the area of 6069 Neevel Road (**TL1**). Investigators followed TV2 to a fast-food restaurant near Lynden, WA. Investigators positively identified Jesus Geovanny MONREAL BOJORQUEZ as the driver and sole occupant of TV2.

42.    At 2:03 pm, investigators followed TV2 to back to 6069 Neevel Road, Ferndale, WA (**TL1**), and observed MONREAL BOJORQUEZ appear to unlock and enter a travel trailer located on the west end of the property.

<u>Surveillance of TV2 on January 3, 2023, with New License Plate</u>

43.    On January 3, 2023, investigators observed TV2 departing the area of 6069 Neevel Road, Ferndale (**TL1**). During this surveillance, investigators noted that TV2 was bearing a new license plate—Washington license plate CFT2201. According to Washington DOL, TV2 was issued license plate CFT2201 on December 28, 2022, with registration listed under Gabriel Barragan Chavez at 966 E. 69th Vista, Apt. 7, Lynden, WA (**TL3**). Investigators recognized the name "Gabriel Barragan Chavez" as a previous registered owner of TV1. When TV1 had been registered to "Gabriel Barragan Chavez," it had a listed address of 4238 Northwest Drive, Bellingham, WA (**TL4**).

44.    At 12:51 pm, investigators followed TV2 to a parking lot in Bellingham, WA. Moments after the arrival of TV2, investigators observed a male walk up to, and then enter, the front passenger seat of TV2. The male was later identified as Zachary TRIPP. TRIPP remained in TV2 for less than two minutes. Investigators then observed TRIPP exit TV2 and return to a blue Chevrolet Blazer (the "blue Blazer").

45.    At 12:53 pm, investigators observed the blue Blazer depart the parking lot. Investigators maintained constant surveillance of the blue Blazer after TRIPP's meeting with the occupant(s) of TV2. Investigators observed the blue Blazer arrive at a gas station in Bellingham, WA, after meeting with TV2. Investigators then observed TRIPP exit the

blue Blazer and enter the gas station convenience store briefly. Investigators did not have visual of TRIPP while he was in the convenience store. Minutes later, investigators observed TRIPP exit the convenience store and enter the front passenger seat of the blue Blazer. Investigators did not observe anyone approach the blue Blazer while it was parked at the gas station.

46.    At 1:35 pm, Whatcom County Sheriff's deputies contacted the occupants of the blue Blazer. Scott STUART was identified as the driver of the blue Blazer and Zachary TRIPP was identified as the front seat passenger. STUART granted deputies consent to search the blue Blazer. During the search of the blue Blazer, investigators located and seized one hundred blue pills—marked "M" on one side and "30" on the other side, drug paraphernalia, and suspected powder fentanyl. Based on training and experience, I know that the pills seized from the blue Blazer are consistent in appearance to other pills that have tested positive for the presence of fentanyl.

47.    Deputies spoke with TRIPP. TRIPP admitted to being a regular user of fentanyl. TRIPP provided deputies with a bag of blue "M 30" pills from one of his pockets. TRIPP said he purchased drugs through a Facebook account under the name "Juann Hernandez" (Target Account 1). TRIPP showed deputies a messages thread with that account, where TRIPP appeared to have ordered drugs that day. TRIPP told deputies he did not think he had met with the user of the account, rather, TRIPP believed he met with a local Hispanic male who acted as a "runner" for the user of Target Account 1.

Surveillance of Target Vehicle 2 on January 18, 2023

48.    On the morning of January 18, 2023, the Honorable S. Kate Vaughan, U.S. Magistrate Judge for the Western District of Washington, granted judicial authorization to install a tracking device on TV2. At 10:59 am, investigators observed TV2 parked at 6069 Neevel Road, Ferndale, WA (**TL1**). At 11:45am, investigators observed TV2 depart the area of the residence.

Affidavit of TFO VandenBos - 18
USAO# 2022R01285

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

49.    At 12:06 pm, investigators observed TV2 parked in a convenience store parking lot in Bellingham, WA. During this surveillance, investigators noted that TV2 was bearing a new license plate, Washington license plate CFT3246. According to Washington DOL, TV2 was issued license plate CFT3246 on January 12, 2023, with registration listed to Luis Barbosa Ortiz at 1820 E. Pole Road, Everson, WA (**TL6**).

50.    At 12:24 pm, investigators observed a Hispanic male matching the description of MONREAL BOJORQUEZ walk away from the area of TV2 and up to the northern door of the travel trailer at 6069 Neevel Road, Ferndale, WA (**TL1**). Investigators observed the Hispanic male enter the travel trailer door and out of sight.

51.    Given the change in license plate, investigators sought and received a second tracking warrant for TV2. *See* MJ23-025 (W.D. Wash. January 19, 2023). Investigators installed a tracking device on TV2 On January 19, 2023.

Controlled Purchase of M30 pills coordinated via Facebook Messenger on January 26, 2023

52.    In January 2023, investigators from DEA Bellingham were contacted by investigators from the Bureau of Indian Affairs (BIA), who informed DEA investigators that a BIA confidential source (CS1)[7] advised that he/she could purchase drugs from a subject known as "Juan" via Facebook Messenger.

---

[7] CS1 started cooperating with the BIA in May 2021 in return for prosecutorial consideration regarding charges relating to the possession of controlled substances and the unlawful possession of a firearm. Shortly after CS1 began to cooperate with law enforcement, CS1 conducted a controlled purchase of suspected fentanyl pills. At the conclusion of the controlled purchase, CS1 was asked by investigators if he/she had taken any pills out of the bag CS1 had just purchased at law enforcement direction. CS1 initially told investigators that he/she had not taken any of the pills that he/she had received from the controlled purchase. Investigators then asked CS1 if there would be anything found in CS1's vehicle. CS1 then informed investigators that there might be one pill in the vehicle. Investigators then located a pill on the front seat floorboard. Upon further questioning from law enforcement, CS1 then told investigators that there would be a second pill in the car, and this pill would be attached to aluminum foil. CS1 directed investigators to a piece of aluminum foil that contained a partially smoked pill, which was stuck to the foil. Both pills were seized by investigators and placed into evidence. BIA investigators discontinued the use of CS1 because of his/her lack of candor when initially asked if he/she had taken any of the pills from the

53.     Notwithstanding CS1's prior documented deception, and significant criminal history, investigators used CS1 to conduct a controlled purchase with the user of the target Facebook Account (hereafter "TA1").

54.     On January 26, 2023, investigators directed CS1 to place a call to TA1. The call was monitored by investigators and recorded. The call, which was answered by a male with broken English, lasted approximately forty-seven seconds and is described below:

| **TA1** | Hey bro. |
| --- | --- |
| CS1 | Amigo, where do I go? |
| **TA1** | Eh, go to truck taco Mexican. |
| CS1 | Where? |
| **TA1** | Eh for smith. Meet in smith. |
| CS1 | The taco truck? |
| **TA1** | Yeah big taco truck. |
| CS1 | Where at? |
| **TA1** | Mexican. |
| CS1 | By, by Laurel? |

controlled buy and because of investigator concerns that CS1 may have an untreated substance use disorder.

In addition to the deception noted during the controlled purchase in May 2021, CS1 has substantial criminal history, some of which specifically relates to crimes of dishonesty. CS1 has twelve felony convictions that relate to criminal impersonation, multiple controlled substance violations, residential burglary, possession of stolen property, theft, and taking a motor vehicle without permission. CS1 has eleven gross misdemeanor convictions that relate to obstruction of law enforcement, unlawful issuance of bank checks or drafts, and assault. CS1 has eight misdemeanor convictions that relate to bail jumping, driving with a suspended license, possession of drug paraphernalia, possession of a controlled substance, disorderly conduct, and refusal to provide information to a law enforcement officer. CS1 has one unclassified conviction that relates to damaging the property of another.

In January 2022, after CS1 had received substance abuse treatment, CS1 resumed cooperation with law enforcement. CS1 is now provided monetary compensation in return for his/her cooperation. CS1 is currently enrolled in a drug treatment program and has conducted five controlled purchases since January 2022 with no discrepancies.

Affidavit of TFO VandenBos - 20
USAO# 2022R01285

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

| TA1 | Eh, it's for smith. I, I can send address. |
|-----|-------------------------------------------|
| CS1 | K. |
| TA1 | I send the address now ok? |
| CS1 | K. |
| TA1 | Ok. |

55.    In summary, the user of TA1 tells CS1 to meet at the taco truck located near the intersection of Smith Road and Guide Meridian Street. CS1 attempts to clarify where TA1 was directing CS1 to meet. TA1 tells CS1 that TA1 would provide the address to the meeting location.

56.    CS1 then exchanged multiple messages with TA1 in the presence of, and at the direction of investigators. Excerpts of those messages are detailed below:

| TA1 | Hey. |
|-----|------|
| CS1 | I have 850. Where do I go? |
| TA1 | Go in truck tacos Mexican for smith please. |
| CS1 | K. |
| TA1 | Smith n meridian. How much you want? $850 ok. |
| CS1 | Ya. |
| TA1 | How many minutes? |
| CS1 | 15 |
| TA1 |  |

Affidavit of TFO VandenBos - 21
USAO# 2022R01285

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

| | He go in this car bro. |
|---|---|
| CS1 | Ok. |
| **TA1** | Wat color ur car? |
| CS1 | Silver. |
| CS1 | Here. |
| **TA1** | Yes he almost to bro in 5 minutes or 4. |

57.    In summary, CS1 tells TA1 that he/she is looking to purchase $850 of pills. TA1 tells CS1 to meet at the taco truck located near the intersection of Smith Road and Guide Meridian Street. TA1 confirms with CS1 that he/she is requesting $850 worth of pills. CS1 confirms the amount with TA1. TA1 then asks CS1 when he/she will arrive at the taco truck. CS1 tells TA1 he/she will arrive in fifteen minutes. TA1 then sends a photograph of a light green sedan and tells CS1 that the person delivering the pills would be arriving in this vehicle.[8] Upon arrival at the meet location, CS1 told TA1 that he was at the meet location, and TA1 indicated that the runner would arrive in 4-5 minutes.

58.    Investigators then traveled, with CS1 in the investigators' vehicle,[9] to the meeting location provided by TA1. Investigators were monitoring the tracking device on TV2, so they knew when to expect the arrival of TV2. Shortly, before the arrival of TV2 at the planned delivery location, investigators directed CS1 to exit investigators' vehicle.

59.    Investigators then observed TV2 arrive in the parking lot near CS1's location. Investigators observed CS1 approach TV2 and enter the front passenger seat. Minutes later, investigators observed CS1 exit the front passenger seat of TV2 and walk directly towards investigators' vehicle. Upon returning to the investigators' vehicle, CS1 transferred custody of the pills purchased during the controlled transaction. Specifically,

---

[8] Though I cannot confirm (because the license plate is not visible) the vehicle in this picture appears to be TV2.

[9] Prior to releasing CS1 for this controlled buy, investigators searched CS1's person to ensure that he/she was not in possession of any controlled substances, weapons, or significant amounts of currency. Investigators maintained constant surveillance of CS1 during this controlled purchase.

Affidavit of TFO VandenBos - 22
USAO# 2022R01285

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1  CS1 provided a sandwich bag containing approximately 500 blue pills marked "M" on one

2  side and "30" on the other. These pills weighed approximately 63.70 grams (including the

3  plastic sandwich bag). Based on training and experience, I know that the pills purchased

4  by CS1 are consistent in appearance to other pills that have tested positive for the presence

5  of fentanyl.

6      60.    During the controlled purchase, CS1 was equipped with both an audio and

7  video recording device. Investigators have reviewed the recordings from the controlled

8  purchase. During their review, investigators observed CS1 hand the buy money to

9  MONREAL BOJORQUEZ. After CS1 handed MONREAL BOJORQUEZ the buy money,

10  investigators then observed MONREAL BOJORQUEZ counting the funds provided by

11  CS1. Investigators then observed MONREAL BOJORQUEZ place the money into his left

12  pants pocket. MONREAL BOJORQUEZ then reached into the inside of his sweater and

13  retrieved a clear plastic sandwich bag containing blue pills.

14      DEA Undercover Purchases M30 Pills from MONREAL BOJORQUEZ in

15      February 2023

16      61.    In February 2023, a DEA undercover (UC) arranged a controlled purchase

17  with a subject referred to as "Juan" via telephone. The DEA UC agreed to purchase $5,000

18  worth of pills from "Juan". "Juan" directed the DEA UC to a meeting location in

19  Bellingham, WA. At 12:18 pm, the DEA UC arrived at the meeting location.

20      62.    At 12:36 pm, investigators observed TV2, bearing Washington license plate

21  CFT3246, depart 6069 Neevel Road, Ferndale, WA (**TL1**) via electronic surveillance.

22      63.    At 12:43 pm, investigators observed TV2 arrive at the meet location and park

23  next to the DEA UC. Investigators observed the DEA UC exit the UC vehicle and get into

24  the front passenger seat of TV2.

25      64.    At 12:45 pm, investigators observed the DEA UC exit the front passenger

26  door of TV2, get back into the DEA UC vehicle, and remain in the parking lot.

27

Affidavit of TFO VandenBos - 23
USAO# 2022R01285

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

65.    At 12:52 pm, investigators observed the DEA UC depart the meeting location. The DEA UC proceeded to a pre-determined debrief location in Bellingham, WA.

66.    At 12:56 pm, investigators observed TV2 travelling west on Paradise Road, in the direction of 6069 Neevel Road, Ferndale, WA (**TL1**). Moments later, investigators observed TV2 arrive at 6069 Neevel Road (**TL1**) via electronic surveillance.

67.    The DEA UC purchased 4,200 blue pills marked "M" on one side and "30" on the other. These pills weighed 557.25 grams (including packaging). The DEA UC identified MONREAL BOJORQUEZ as the individual who provided the pills the DEA UC. Based on training and experience, I know that the pills purchased by the DEA UC are consistent in appearance to other pills that have tested positive for the presence of fentanyl.

### Surveillance of TV2 on April 10, 2023, with New License Plate

68.    On April 10, 2023, at 12:06 pm, investigators observed TV2 depart 6069 Neevel Road, Ferndale, WA (**TL1**), via electronic surveillance. Investigators then observed TV2 parked at a gas station in Ferndale, WA. During this surveillance, investigators noted that TV2 was bearing a new license plate—Washington license plate CHG8071. [10] According to Washington DOL, TV2 was issued license plate CHG8071 on March 29, 2023, with registration to Sebastian Cano Francisco at 2010 Front Street, Trailer 6, Lynden, WA (**TL5**). Investigators observed TV2 was occupied by a male driver wearing a baseball cap. Agents were not able to confirm whether the identity of the driver was, or was not, MONREAL BOJORQUEZ.

### Surveillance of TV2 on April 18, 2023, and Identification of Jose COTA GOMEZ

69.    On April 18, 2023, at 4:15 pm, investigators observed TV2 depart the area of **Target Location 1** via electronic surveillance. Investigators then observed TV2 parked

---

[10] TV2 was previously assigned Washington license plate CFT3246 with registration to Luis Barbosa Ortiz at 1820 E. Pole Road, Everson, WA (**TL5**). According to Washington DOL records, the registration for CHG8071 (new TV2 license plate) and CFT3246 (old TV2 license plate) relate to the same vehicle, as the vehicle identification number associated with both the new and old registration was the same.

at a market named Abarrotes La Gloria Market, located at 5974 Guide Meridian Road, Bellingham, WA. Investigators saw TV2 was bearing another new license plate, which was CHG9547. According to Washington DOL, TV2 was issued license plate CHG9547 on April 12, 2023, with registration to Perfecto Barragan Mendez at 966 E. 69th Vista, Apt. 7, Lynden, WA (**TL3**).

70.     Investigators noted that a previously unidentified male (later identified as Jose Manuel COTA GOMEZ) was the driver of TV2. Investigators observed COTA GOMEZ enter and exit the Abarrotes La Gloria Market several times before returning to TV2 and repositioning TV2 in the parking lot of the market.

71.     Following the repositioning of TV2, investigators observed Perfecto BARRAGAN MENDEZ drive into the parking lot of the market in a blue Chevrolet Cobalt bearing Washington license plate CHG8098. A check of that WA DOL records indicated that vehicle was registered to Perfecto BARRAGAN-MENDEZ at 966 E. 69th Vista, Apt. 7, Lynden, WA (**TL3**). Investigators noticed the vehicle identification number (VIN) matched the VIN for **TV3**, which had previously been assigned license plate CBZ2761. WA DOL records indicated the new registration had been issued on April 5, 2023.

72.     Investigators observed BARRAGAN MENDEZ exit **TV3** and get into the driver's seat of TV2, as COTA GOMEZ moved over to the passenger seat. Investigators observed TV2 depart the market parking lot, and maintained electronic surveillance of TV2 as it traveled to La Gloria Market, located at 4140 Meridian Street, Bellingham, WA.

73.     At 5:38 pm, investigators observed COTA GOMEZ and BARRAGAN MENDEZ exit TV2 and enter La Gloria Market at 4140 Meridian Street, Bellingham, WA. After a few minutes in the store, investigators observed COTA GOMEZ and BARRAGAN MENDEZ reenter TV2 and depart the area. A later review of judicially authorized tracking information showed TV2 returned to the area of **Target Location 1**.

74.     Investigators were aware, based on their training and experience, that both Abarrotes La Gloria Market (5974 Meridian Street, Bellingham, WA) and La Gloria

Affidavit of TFO VandenBos - 25
USAO# 2022R01285

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

Market (4140 Meridian Street, Bellingham, WA) were grocery stores that both offered money remitting services. Investigators knew, based on their training and experience, that such money remitter services are commonly used by drug traffickers to remit drug proceeds to Mexico from the United States.

Identification of Target Location 2 on April 21, 2023

75.    On April 21, 2023, investigators monitored the judicially authorized GPS tracking device that had been installed on TV2. Investigators saw that at 10:10 am, TV2 left the area of **Target Location 1** and drove towards Bellingham, WA.

76.    At 10:17 am, investigators physically observed TV2 parked in the parking lot of the Sunset Pond Apartments located at 1401 Woodstock Way, Bellingham, WA. TV2 was parked near Building H, which is the Building in the Sunset Pond Apartments where **Target Location 2** is located.

77.    At 10:40 am, investigators saw COTA GOMEZ get out of TV2 carrying a white box. COTA GOMEZ walked out of view. Investigators could not see which apartment COTA GOMEZ accessed, but noted he walked in the direction of units 101H, 102H, 103H, and 104H (Unit 102H is **TL2**). After about five minutes, plainclothes investigators saw COTA GOMEZ, still carrying the white box, walk back to TV2 and drive from the area.

Information Regarding Target Location 2

78.    On May 10, 2023, investigators spoke with two managers of the Sunset Pond Apartments. The managers of the apartment complex advised investigators that Sunset Pond Apartment employees had reported suspicious activity in relation to Unit 102H, i.e., **Target Location 2**. The employees believed the suspicious activity was drug related.

79.    In response to an administrative subpoena, managers of the Sunset Pond Apartments provided information related to the current occupants of **Target Location 2**. The rental application for the current occupants of **Target Location 2** was signed by Lucio Mauricio CORTEZ BARRAGAN, Jesus BARRAGAN CHAVEZ, and Antonio

AFFIDAVIT OF TFO VANDENBOS - 26
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

BARRAGAN CHAVEZ. The proposed move-in date listed on these documents was October 22, 2022, with a one-year rental term. The records included scanned copies of Washington State driver's licenses and/or identification cards of the three individuals. Both Jesus BARRAGAN CHAVEZ and Antonio BARRAGAN CHAVEZ had the address of 4238 Northwest Drive, Bellingham, WA (**TL4**), listed on their scanned driver's licenses. Antonio BARRAGAN CHAVEZ appeared to be listed as a co-signer, not a tenant, on the application.

### DEA Undercover Purchases M30 Pills from COTA GOMEZ in May 2023

80.     In May 2023, a DEA UC arranged a controlled purchase with a subject referred to as "Juan" via telephone. The DEA UC contacted "Juan" utilizing the same telephone number from the previous controlled purchase in February 2023. The DEA UC also recognized "Juan," via his voice, as the same individual who arranged this previous controlled purchase. The DEA UC agreed to purchase $4,000 worth of pills from "Juan." "Juan" directed the DEA UC to a meeting location in Bellingham, WA.

81.     At 11:07 am on the date of the purchase, investigators observed the DEA UC arrive and park at the prearranged meeting location.

82.     At 11:19 am, investigators watched as TV2 departed the area of 6069 Neevel Road, Ferndale, WA (**TL1**), via the judicially authorized GPS tracking device that had been installed on TV2.

83.     At 11:27 am, investigators saw TV2 arrive at the meeting location bearing Washington license plate CHG9547. Investigators observed COTA GOMEZ exit TV2 and get into the front passenger seat of the DEA UC vehicle. Approximately one minute later, investigators observed COTA GOMEZ exit the DEA UC vehicle and briefly re-access TV2, before returning to the DEA UC vehicle.

84.     COTA GOMEZ remained in the DEA UC vehicle for a brief time before investigators observed him exit the DEA UC vehicle. The DEA UC departed the parking lot and was followed by investigators to a pre-determined location in Bellingham, WA.

The DEA UC later confirmed the purchase of approximately 4,000 blue pills marked "M" on one side and "30" on the other from COTA GOMEZ. These pills weighed 482 grams (including packaging). Based on training and experience, investigators recognized that the pills purchased by the DEA UC were consistent in appearance to other pills that have tested positive for the presence of fentanyl.

85.    Investigators maintained surveillance of COTA GOMEZ after the undercover controlled purchase. After appearing to purchase food from a food truck located in the same parking where the deal had occurred, investigators observed COTA GOMEZ depart the area driving TV2. With the assistance of aerial surveillance, investigators watched as TV2 returned to 6069 Neevel Road, Ferndale, WA (**TL1**).

COTA GOMEZ Conducts Suspected Drugs Transactions at Target Location 2 on May 23, 2023

86.    On May 23, 2023, at 3:30 pm, investigators were monitoring judicially authorized GPS information related to TV2. Investigators saw that TV2 was in the area of **Target Location 2**. Investigators then traveled to the area of **Target Location 2**.

87.    At 3:40 pm, investigators saw COTA GOMEZ standing at the front of TV2 with the hood up. COTA GOMEZ appeared to be doing mechanical work on the vehicle.

88.    At 4:19 pm, investigators watched a black Chevrolet Equinox, bearing Washington license plate 112ZKB, arrive and park near COTA GOMEZ and TV2. A female exited the passenger's seat of Chevrolet Equinox and appeared to greet COTA GOMEZ near TV2.

89.    After greeting each other, investigators watched as COTA GOMEZ took a key out of his pocket and unlocked the door to Unit 102H at 1401 Woodstock Way, Bellingham, WA (**TL2**). COTA GOMEZ went inside while the female waited near TV2.

90.    About three minutes later, COTA COMEZ emerged from **Target Location 2**. COTA GOMEZ and the female then entered TV2. The vehicle did not move. After about two minutes, COTA GOMEZ and the female exited TV2. The female walked to the

Affidavit of TFO VandenBos - 28
USAO# 2022R01285

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

Chevrolet Equinox, reentered the passenger's seat, and the Chevrolet Equinox departed the area. A records check through the Washington State DOL of the Chevrolet Equinox showed it was registered to Jared LANKHAAR. According to law enforcement records, LANKHAAR has two felony convictions related to Possession of a Controlled Substance from 2005 and 2019.

91.    Investigators continued to watch COTA GOMEZ. At 4:30 pm, investigators saw a Nissan Murano bearing Washington license plate CHG9074 arrive and park near TV2. An unidentified male walked from the Nissan Murano and entered the passenger seat of TV2. COTA COMEZ entered the front driver's seat. Again, the vehicle did not move. After about two minutes, the unidentified male exited TV2, reentered the passenger's seat of the Nissan Murano, and the Nissan Murano departed the area. According to Washington State DOL, the Nissan Murano was registered to Christopher ZOROTOVICH. According to law enforcement databases, ZOROTOVICH has five felony convictions related to controlled substance violations, which included Manufacture/Delivery of a Controlled Substance, Possession of a Controlled Substance with Intent to Deliver, and Possession of a Controlled Substance. These convictions occurred in 2009, 2008, 2005, and 2004.

92.    Investigators suspected, based on their training and experience, that COTA COMEZ's interactions with the occupants of the Chevrolet Equinox and the Nissan Murano were drug transactions.

93.    At 5:21 pm, investigators observed COTA GOMEZ exit **Target Location 2**, enter TV2, and leave the area. COTA GOMEZ appeared to purchase items from a nearby gas station before returning to the Sunset Pond Apartments. Upon his return, investigators observed COTA GOMEZ as he reentered **Target Location 2**.

Surveillance of COTA GOMEZ and BARRAGAN MENDEZ on May 31, 2023

94.    On May 31, 2023, investigators began watching TV2, which was parked at Perfecto BARRAGAN MENDEZ's residence located at 966 E. 69th Vista, Apt. 7, Lynden, WA (**TL3**).

AFFIDAVIT OF TFO VANDENBOS - 29
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

95.     At 12:50 pm, investigators observed BARRAGAN MENDEZ depart the area of **Target Location 3** driving TV2. Investigators followed TV2 to La Gloria Market located at 4140 Meridian Street, Bellingham, WA. Investigators observed BARRAGAN MENDEZ park TV2 in the parking lot of La Gloria Market and remain in the driver's seat of TV2 with the driver's window partially rolled down.

96.     At 1:32 pm, investigators observed Jose COTA GOMEZ enter the front passenger's seat of TV2. Investigators did not observe COTA GOMEZ's arrival in the parking lot of La Gloria Market prior to him entering TV2.[11] Once COTA GOMEZ entered TV2, investigators observed BARRAGAN MENDEZ roll up the open window of TV2. Once the window of TV2 was closed, investigators observed BARRAGAN MENDEZ and COTA GOMEZ as they sat in TV2. Investigators observed both BARRAGAN MENDEZ and COTA GOMEZ looking down towards the center console area of TV2.

97.     At 1:37 pm, investigators observed COTA COMEZ exit TV2 and enter the driver's seat of **TV3** and depart the parking lot. Investigators saw that **TV3** was bearing a new license plate—Washington plate CHH1986. According to Washington DOL records, the registration was listed to Gabriel BARRAGAN CHAVEZ at 4238 Northwest Drive, Bellingham, WA (**TL4**). Washington DOL records indicated that plate was issued on May 30, 2023. Investigators did not follow **TV3**, as they maintained surveillance of TV2 and BARRAGAN MENDEZ.

98.     Immediately following the departure of COTA GOMEZ in **TV3**, investigators observed BARRAGAN MENDEZ exit TV2 and walk towards the entrance of La Gloria Market.

---

[11] Following the observation of **TV3** at La Gloria Market on May 31, 2023, investigators reviewed remote video camera footage of 6069 Neevel Road, Ferndale, WA. Video camera footage revealed a vehicle matching the description of **TV3** depart 6069 Neevel Road (**TL1**) at 1:09 pm on May 31, 2023. Based upon a review of Google Maps, the approximate drive-time from 6069 Neevel Road, Ferndale, WA (**TL1**), to La Gloria Market is fourteen minutes. As such, investigators believe that COTA GOMEZ departed from 6069 Neevel Road, Ferndale, WA (**TL1**) in **TV3** prior to meeting with BARRAGAN MENDEZ at La Gloria Market.

AFFIDAVIT OF TFO VANDENBOS - 30
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

99.    At 1:46 pm, investigators observed BARRAGAN MENDEZ return to TV2 from La Gloria Market. Investigators then observed BARRAGAN MENDEZ photographing receipts, utilizing a cell phone, while he sat in TV2. Based on their training and experience, investigators were aware that the La Gloria Market at that location is frequently used by drug traffickers to remit drug proceeds to sources of supply in Mexico and elsewhere. Based upon my training and experience, I also known that drug traffickers frequently photograph money remittance receipts and send these photographs as proof of payment.

100.    Investigators suspected that as they were observing BARRAGAN MENDEZ and COTA GOMEZ looking at the center console of TV2, they were reconciling amounts owed to their supplier and amounts that would be retained for their profit. Investigators believe that BARRAGAN MENDEZ used the money transfer services of La Gloria to remit payment to his and COTA GOMEZ's supplier.

101.    At 1:46 pm, investigators followed BARRAGAN MENDEZ as he drove away from that area. Investigators watched as BARRAGAN MENDEZ drove TV2 to a pipe fittings manufacturing facility, where it remained out of view for about five minutes.

102.    At 2:14 pm, investigators watched as TV2 parked in front of a Whatcom Educational Credit Union bank located at 2045 Front Street, Lynden, WA. Gabriel BARRAGAN CHAVEZ exited the front passenger seat of TV2, and went inside of the Whatcom Educational Credit Union bank. Gabriel BARRAGAN CHAVEZ returned to TV2 about ten minutes later.

103.    At 2:27 pm, investigators saw BARRAGAN MENDEZ park TV2 in front of the Mixteca Group Money Services store, located at 8174 Guide Meridian Road, Lynden, WA. Investigators observed BARRAGAN MENDEZ as he walked toward the store.

104.    At 2:49 pm, investigators observed BARRAGAN MENDEZ and Gabriel BARRAGAN CHAVEZ walking away from the Mixteca Group Money Services store. Both Gabriel BARRAGAN CHAVEZ and BARRAGAN MENDEZ were holding papers

AFFIDAVIT OF TFO VANDENBOS - 31
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

in their hands. Investigators were aware, based on their training and experience, that the Mixteca Group Money Services offered money remitter services that could be used to remit money to third parties, including third parties residing outside of the United States.

<u>Surveillance of COTA GOMEZ and Gabriel BARRAGAN CHAVEZ on June 13, 2023</u>

105.    On June 13, 2023, investigators were conducting surveillance in the area of **Target Location 1**. At 1:15 pm, investigators saw **TV3** parked in the area of COTA GOMEZ's trailer.

106.    At 1:47 pm, investigators saw COTA GOMEZ walk out of **Target Location 1**, and walk to a green 2002 Toyota Camry, bearing Washington license plate 486YWO (hereafter "Target Vehicle 4" or "TV4"),[12] that was parked nearby. COTA GOMEZ accessed TV4, grabbed an item, and then returned to his trailer (**TL1**).

107.    At 1:51 pm, investigators saw COTA GOMEZ leave **Target Location 1**, and depart the area in TV4. COTA COMEZ returned to **Target Location 1** at 2:25 pm. COTA GOMEZ left in TV4 again at 2:33 pm, returning to **Target Location 1** at 3:09 pm. At 3:33 pm, COTA GOMEZ again departed from the area of **Target Location 1** driving TV4. Investigators followed COTA GOMEZ and TV4.

108.    Investigators watched as COTA GOMEZ drove to 966 E. 69th Vista, Apt. 7, Lynden, WA (**TL3**). Investigators noted that while COTA GOMEZ was driving from **Target Location 1** to **Target Location 3**, he made several driving maneuvers that investigators recognized as being consistent with counter-surveillance. These maneuvers including taking an indirect route and making an abrupt U-turn.

---

[12] According to the Washington DOL, that plate was registered to Lonnie and Jean MCGEE at 7035 S 133rd Street, Unit A200, in Seattle, WA. However, the DOL databases also indicated the vehicle had been reported as sold on January 5, 2023, with a new owner listed as Francisco BERDUO at 15232 SE 272nd Street, Unit 66, Kent, WA.

AFFIDAVIT OF TFO VANDENBOS - 32
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

109.     After arriving at **Target Location 3**, TV4 remained parked for only a few minutes before leaving. Investigators noticed that COTA GOMEZ had picked up a passenger at that location. This passenger was later identified as Gabriel BARRAGAN CHAVEZ.

110.     Investigators watched as TV4 parked at a strip mall parking lot in Everson, WA. Investigators observed COTA GOMEZ and Gabriel BARRAGAN CHAVEZ walk towards the storefronts on foot. Soon after, investigators saw COTA GOMEZ and Gabriel BARRAGAN CHAVEZ returning to TV4. COTA GOMEZ and Gabriel BARRAGAN CHAVEZ appeared to be followed by a third Hispanic male individual, later identified via a Washington State Department of Licensing photograph as Sebastian CANO FRANCISCO. CANO FRANCISCO walked to a nearby white 2012 Nissan Titan pickup truck, bearing Washington license plate D13004A.

111.     Investigators followed the Nissan Titan pickup truck. Investigators noticed the Nissan Titan pickup truck appeared to be taking indirect routes, and was travelling well below the posted speed limit. Concerned the driver of the Nissan Titan pickup truck was conducting counter-surveillance, investigators discontinued surveillance.

112.     Investigators later obtained video surveillance from the strip mall in Everson, WA, during the time COTA GOMEZ, Gabriel BARRAGAN CHAVEZ, and Sebastian CANO FRANCISCO were in that area. While reviewing the footage, law enforcement observed COTA GOMEZ, Gabriel BARRAGAN CHAVEZ, and CANO FRANCISCO enter the Valley Drug store located in Everson, WA. Investigators learned there was a WA State Driver's Licensing Office located inside that store. Investigators observed on the video surveillance as COTA GOMEZ appeared to take money from his pocket and count it before returning it to his pocket. Shortly after, all three individuals went to the WA State Driver's Licensing Officer desk, where CANO FRANCISCO and Gabriel BARRAGAN CHAVEZ appeared to exchange paperwork with the employee behind the licensing counter.

AFFIDAVIT OF TFO VANDENBOS - 33
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

113.    While investigators have not confirmed which vehicle Gabriel BARRAGAN CHAVEZ and CANO FRANCISCO were registering on this date, this behavior was noteworthy to investigators given that during the period of Gabriel BARRAGAN CHAVEZ and CANO FRANCISCO had both been the registered owners of TV2. That COTA GOMEZ—one of the DTO's current runners—accompanied Gabriel BARRAGAN CHAVEZ and CANO FRANCISCO to the licensing office on this date, further confirmed investigator's belief that this activity related to the drug trafficking activities discussed herein.

Traffic Stop of Perfecto BARRAGAN MENDEZ and Gabriel BARRAGAN CHAVEZ on June 21, 2023

114.    On June 21, 2023, uniformed troopers with WSP were conducting routine traffic patrol in the area of the Guide Meridian Road near Bellingham, WA. Troopers observed TV2, bearing Washington license plate CHG9547, driving in that area.

115.    A WSP trooper conducted a traffic stop of TV2 based on illegal window tint. Another WSP trooper in the area had noted that TV2 appeared to have briefly met with another vehicle in a nearby parking lot, and suspected drug activity.

116.    The driver of TV2 was identified as Perfecto BARRAGAN MENDEZ. The passenger was identified as Gabriel BARRAGAN CHAVEZ. A trooper noticed a beer can in the back seat of TV2 and the odor of intoxicants coming from the vehicle. Suspecting that BARRAGAN MENDEZ was under the influence of alcohol, troopers requested to obtain a portable breath test sample. The presumptive result provided by BARRAGAN MENDEZ showed he had alcohol present on his breath, but was under the legal driving limit for Washington State.

117.    During the stop, a trooper observed a backpack in the vehicle. When asked,[13]

---

[13] WSP troopers communicated with BARRAGAN MENDEZ and Gabriel BARRAGAN CHAVEZ in Spanish, using a combination of app-based translation programs and a phone translation service.

AFFIDAVIT OF TFO VANDENBOS - 34
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Perfecto BARRAGAN MENDEZ initially stated that the bag belonged to his passenger, Gabriel BARRAGAN CHAVEZ.

118.    A trooper asked Perfecto BARRAGAN MENDEZ for consent to search TV2. BARRAGAN MENDEZ agreed, and law enforcement searched the vehicle. In the backpack, law enforcement located approximately $1,560 U.S. currency, approximately two thousand pills suspected of containing fentanyl, and several individual baggies of a white powdery substance, also suspected of containing fentanyl.

119.    After law enforcement located the suspected controlled substances, Perfecto BARRAGAN MENDEZ then told investigators that the items in the bag belonged to him— not to Gabriel BARRAGAN CHAVEZ as he had previously indicated. BARRAGAN MENDEZ indicated that he was holding the items for a friend, whom he identified as "Jose." In the context of this investigation, investigators believe that BARRAGAN MENDEZ was referring to Jose COTA GOMEZ.

120.    During the stop and subsequent search of BARRAGAN MENDEZ, Gabriel BARRAGAN CHAVEZ, and TV2, troopers located and seized three digital devices. Specifically, investigators seized a Samsung brand cell phone cell phone from the person of Gabriel BARRAGAN CHAVEZ; a Samsung brand cell phone from TV2; and an Apple iPhone brand cell phone from the person of Perfecto BARRAGAN MENDEZ. Gabriel BARRAGAN CHAVEZ and Perfecto BARRAGAN MENDEZ were released following the traffic stop.

121.    WSP troopers contacted investigators with the DEA and transferred the three cell phones to DEA investigators. Investigators later obtained a federal search warrant for those devices. *See* MJ23-332 (W.D. Wash. June 27, 2023). Among the digital evidence located in those devices, investigators found photographs of money remittance receipts with destinations in Mexico on a device belonging to Perfecto BARRAGAN MENDEZ.

122.    In a device belonging to Gabriel BARRAGAN CHAVEZ, investigators located a WhatsApp message thread with a contact named "Toño B". The message thread

AFFIDAVIT OF TFO VANDENBOS - 35
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

did not display any messages. Investigators saw a photo linked to that WhatsApp account that displayed a family and/or friends-type photo that appeared to include Antonio BARRAGAN CHAVEZ. Investigators found a contact saved to the device with the same phone number linked to the WhatsApp account under the name "Toño B". Investigators recognized Antonio BARRAGAN CHAVEZ as a resident of **Target Location 4**,[14] as well as the co-signer for the apartment at **Target Location 2**. Investigators also observed photographs of money remittance receipts saved to Gabriel BARRAGAN CHAVEZ's device.

123.    On the same date, following the traffic stop, investigators watched remotely recorded video surveillance footage with a view of **Target Location 3**. Investigators watched as Perfecto BARRAGAN MENDEZ returned to Target Location 3. Via remote video, investigators observed BARRAGAN MENDEZ enter **Target Location 3**. After remaining in **Target Location 3** for approximately fifteen minutes, investigators observed BARRAGAN MENDEZ exit **Target Location 3**. BARRAGAN MENDEZ then entered TV2 and drove away. Investigators observed tracker information as it drove around Whatcom County, Washington. Investigators saw TV2 make a short visit to Everson, WA, and then drive to the general area of La Gloria Market, located at 4140 Meridian Street, Bellingham, WA. After about twenty minutes, TV2 returned to **Target Location 3**. According to remotely recorded video footage, TV2 remained parked in front of Target Location 3 for about two hours. During that time, both Perfecto BARRAGAN MENDEZ and Gabriel BARRAGAN CHAVEZ could be seen speaking on cell phones in front of the residence.

---

[14] Investigators were aware, based on a review of Whatcom County Assessor's Office information, that Antonio BARRAGAN and Elizabeth BARRAGAN were listed as owners of **Target Location 4**. On December 16, 2022, investigators had driven by that address and observed two vehicles registered to Antonio BARRAGAN CHAVEZ parked in the address.

AFFIDAVIT OF TFO VANDENBOS - 36
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

124.    At 9:17 pm, Perfecto BARRAGAN MENDEZ got into TV2 and drove from the area. BARRAGAN MENDEZ did not, based on the remotely recorded footage, appear to pack any significant belongings prior to leaving. Over the following day, investigators monitored judicially authorized vehicle tracker information for TV2 which showed that the vehicle drove south through Washington, Oregon, and California.

125.    On June 22, 2023, at 7:00 pm, location information indicated TV2 parked in Los Banos, California. Investigators noted the tracker information showed that the vehicle was parked approximately one block away from 1674 Dodder Drive, Los Banos, CA. As noted above, this address was the address listed on a money remittance receipt seized during the traffic stop of Joel ARMENTA LOPEZ on November 5, 2022. The date on this remittance receipt was October 30, 2022, with sender "Perfecto BARRAGAN MENDEZ."

126.    Investigators noted that on July 8, 2023, at 10:34 am, remotely recorded video footage showed a male matching the appearance of Gabriel BARRAGAN CHAVEZ leaving the area of the front door of **Target Location 3**, indicating to investigators the property was still being utilized by members of the drug trafficking organization.

Identification of Target Location 5

127.    Investigators have been monitoring judicially authorized location information associated with **TV3**. Based upon GPS location information for TV3, as well as the physical surveillance discussed above, investigators believe that **TV3** has been primarily used by COTA GOMEZ since in or about April 2023.

128.    During the end of June 2023, investigators saw that location information for **TV3** indicated that the vehicle began to spend a significant amount of time around 2412 Rimland Drive, Bellingham, WA (**TL5**). Investigators saw that **TV3** began to spend the night parked near **Target Location 5**. Specifically, since June 26, 2023 (AT TL5 overnight), through July 12, 2023, investigators saw that TV3 remained parked in the vicinity of **Target Location 5** overnight, or for a significant amount of the nighttime hours,

Affidavit of TFO VandenBos - 37
USAO# 2022R01285

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

on approximately fourteen occasions. During this same period of time, tracking data indicated that **TV3** was also still making frequent visits to **Target Location 1**.

129.    On June 20, 2023, investigators had physically observed **Target Vehicle 3** parking in the area of **Target Location 5**. After parking **Target Vehicle 3** across the street, investigators watched as COTA GOMEZ walked towards the front entrance of the apartment complex located at 2412 Rimland Drive, Bellingham, WA, where **Target Location 5** is located. COTA GOMEZ walked towards the area of the front entrance before investigators lost sight of COTA GOMEZ.

130.    On July 4, 2023, investigators reviewed judicially authorized location information for **TV3** and noted that **TV3** had been parked in the area of **Target Location 5**. At about 2:51 pm, location information indicated TV3 drove from that area to **Target Location 1**. After arriving at **Target Location 1**, the location information indicated **TV3** made several short trips to other addresses around Whatcom County, returning to **Target Location 1** each time. The activity was consistent, based on the training and experience of investigators, with **TV3** conducting drug transactions, and then returning to **Target Location 1**. At approximately 8:15 pm, investigators observed **TV3** appeared to have returned to the area of **Target Location 5**.

131.    On July 5, 2023, investigators went to the apartment building at 2412 Rimland Drive, Bellingham, WA. Investigators spoke with a building manager at that location, who provided information regarding that location, including surveillance footage showing the interior and exterior of the building.

132.    Investigators reviewed footage from July 4, 2023, and compared it with the tracking information from **TV3**. As discussed above, investigators knew that **TV3** had arrived in the area of **Target Location 5** at around 8:15 pm on July 4, 2023. Based upon their review of the video, investigators observed that at 8:21 pm, a male matching the description of Jose COTA GOMEZ walked up to, and sat on a bench, near the front door

AFFIDAVIT OF TFO VANDENBOS - 38
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2412 Rimland Drive, Bellingham, WA. The male's face was obscured by a hat, but his physical appearance was consistent with COTA GOMEZ's height, weight, and hair color.

133.     Approximately five minutes later, the surveillance showed an apparently uninvolved male use a proximity card to access the apartment complex. The male suspected to be COTA GOMEZ appeared to enter in the doorway before the door closed behind that person. Investigators suspected COTA GOMEZ likely did not have a keycard and had been waiting to walk in behind a key-holding resident.

134.     Investigators watched on recorded surveillance video as the male suspected to be COTA GOMEZ went to the fourth floor and appeared to wait in front of Room 410. After a short time, COTA GOMEZ entered Room 410. It was unclear, based on the video, if he was let in or accessed the room with a key.

135.     The building manager provided rental records associated with Room 410 (**Target Location 5**). Room 410 had been rented since December 2022 to a female named Karla CHAVEZ MONTOYA. According to the building manager, CHAVEZ MONTOYA[15] was living at **Target Location 5** with her young daughter. The building manager indicated that COTA GOMEZ was not listed on the rental contract.

136.     On July 13, 2023, investigators reviewed video footage—again provided by the management for the Trailview Apartment complex—and compared it with the tracking information from **TV3**. Investigators noted that **TV3** had left the area of **Target Location 5** at 11:59 am on July 10, 2023. **TV3** appeared to travel to a nearby grocery store parking lot where it stayed for about ten minutes.

---

[15] A search of law enforcement databases indicated Karla Chavez Montoya had felony convictions including Robbery in the 2nd Degree, Bail Jumping, and Identity Theft in the 2nd Degree. Investigators noted that she had prior arrests for Manufacture/Delivery/Possess with Intent of Controlled Substance (2016) and Possession of a Controlled Substance (2017 and 2018). Some of those arrests resulted in related convictions that were later vacated under *State v. Blake*, 481 P. 3d 521 (Wash. 2021)

AFFIDAVIT OF TFO VANDENBOS - 39
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

137.    At 12:15 pm, tracking information showed that **TV3** returned to the area of the Trailview Apartments. Based upon their review of the video, investigators observed that at 12:19 pm, COTA GOMEZ could be seen walking to the front entrance doors of the apartment complex. COTA GOMEZ appeared to remove a key card from his pocket, which he used to open the exterior door. Subsequent video showed COTA GOMEZ entering Apartment 410 (**TL5**).

<u>Drug Related Traffic Stops Involving Jesus MONREAL BOJORQUEZ and Target Location 6 – January 2023 and June 2023</u>

138.    On January 10, 2023, a Whatcom County Sheriff's Office deputy conducted a traffic stop on TV2 after it was observed visiting 1820 East Pole Road (**TL6**) for approximately five minutes. The registered owner of the vehicle at that time, Gabriel BARRAGAN CHAVEZ, did not have a valid driver's license. The driver was identified as Jesus MONREAL BOJORQUEZ. MONREAL BOJORQUEZ told law enforcement he lived at **Target Location 6**. MONREAL BOJORQUEZ consented to a search of his person, and law enforcement located approximately $400 in his wallet, and approximately $50 in his pocket. A narcotics detection canine was deployed around the vehicle, and alerted to the odor of narcotics coming from in or around TV2. MONREAL BOJORQUEZ consented to a search of the vehicle. Law enforcement located a small quantity of suspected drug paraphernalia.

139.    On June 25, 2023, a Whatcom County Sheriff's Office deputy conducted a traffic stop on a vehicle in the area of East Pole Road in Bellingham, WA. The vehicle was stopped by law enforcement for a traffic violation, as well as an expired registration. The driver of the vehicle was identified as Jesus MONREAL BOJORQUEZ based upon his Washington State driver's license. According to the Washington State Department of Licensing, MONREAL BOJORQUEZ had listed his residential address as 1820 E. Pole

AFFIDAVIT OF TFO VANDENBOS - 40
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Road, Everson, WA (**TL6**) on a driver's license, which had been issued February 16, 2023.[16]

140.    Deputies asked MONREAL BOJORQUEZ for consent to search his vehicle, which he granted. Deputies located a single suspected "M 30" stamped fentanyl-laced pill in MONREAL BOJORQUEZ' pocket. Deputies also located over $800 in U.S. currency in MONREAL BOJORQUEZ' pocket. MONREAL BOJORQUEZ had three cell phones in his possession, which he told deputies were for work, pleasure, and calling his wife.

<u>Additional Drug Related Activity Involving Target Location 6</u>

141.    On October 24, 2022, law enforcement had responded to a death investigation at **Target Location 6**. During that investigation, a 50-year-old female was found to be deceased. A later Medical Examiner's report indicated the victim had died due to fentanyl and methamphetamine intoxication.

142.    On June 10, 2023, a Whatcom County Sheriff's Office deputy conducted a traffic stop on a vehicle that had been seen leaving **Target Location 6**. The deputy observed the vehicle cross over a fog-line while driving. The driver was identified as Luis ORTIZ, a resident of **Target Location 6**. During that traffic stop, ORTIZ stated there were no drugs in the vehicle, but was aware his female passenger like to use methamphetamine. Law enforcement spoke with the female passenger, who provided a deputy with a small baggie of suspected fentanyl-laced powder. The female denied the drugs had come from **Target Location 6**.

143.    On June 11, 2023, a Whatcom County Sheriff's Office deputy conducted a traffic stop in the area of Everson, WA. The law enforcement report did not list the reason for the traffic stop. The driver was identified as Chase JONES. The deputy recognized a passenger in the vehicle as Luis FERNANDEZ, who appeared to be attempting to hide his

---

[16] As noted above, as of July 7, 2023, Jesus MONREAL MOJORQUEZ's updated residential address with Washington DOL is 6069 Neevel Road, Ferndale, WA (**TL1**).

AFFIDAVIT OF TFO VANDENBOS - 41
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

identity by covering his face with a bandana. He was found to have an active arrest warrant for a felony offense. While speaking to the deputy, JONES said he had just picked up FERNANDEZ from **Target Location 6**. FERNANDEZ consented to a search of his person, and the deputy located approximately 21.5 grams of suspected methamphetamine on his person, as well as approximately six suspected fentanyl-laced pills.

144.    On June 16, 2023, a Whatcom County Sheriff's Office deputy saw a vehicle being driven in the area of East Pole Road. The deputy recognized the driver as Rogelio RAMIREZ from previous contacts. RAMIREZ had a suspended driver's license, and was stopped by law enforcement. RAMIREZ was detained and provided *Miranda* warnings. A female with documented narcotics history was also in the vehicle. A law enforcement narcotics detection canine was deployed around the vehicle, and alerted to odor of narcotics in or around the vehicle. RAMIREZ provided consent for law enforcement to search the vehicle, and a small quantity of suspected fentanyl and suspected methamphetamine were located. RAMIREZ denied the drugs had come from **Target Location 6**.

145.    On June 17, 2023, a Whatcom County Sheriff's Office deputy stopped a vehicle in Whatcom County, WA, for an equipment violation. The driver was identified as Roderick PULLAR, who was recognized by local law enforcement as having drug history. When asked if he was in possession of any drugs, PULLAR provided law enforcement with a bag of a white crystalline substance which appeared consistent with methamphetamine. PULLAR told law enforcement that he had purchased the methamphetamine from Rickey PERALEZ at **Target Location 6**.

146.    On June 23, 2023, a Whatcom County Sheriff's Office deputy stopped and talked with a male they had seen stumbling in the roadway during hours of darkness in the area of 1900 E. Pole Road, Everson, WA. The male, who was identified as Sindick Jimmy, provided the deputy with drug paraphernalia he had on his person. Jimmy told law enforcement he had been "sick," and had just purchased $15-worth of fentanyl at **Target Location 6**, which he had since used. Investigators noticed that JIMMY had been contacted

AFFIDAVIT OF TFO VANDENBOS - 42
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

during 2021 by law enforcement at 5914 Roberts Road, Bellingham, WA, the current registered address for Target Vehicle 4.

147.    On July 1, 2023, a Whatcom County Sheriff's Office deputy observed a vehicle they recognized as being associated with Luis ORTIZ driving in Whatcom County, WA. The deputy recognized the vehicle as associated with **Target Location 6**. The vehicle abruptly pulled into an agricultural field and turned off its lights. The deputy approached the vehicle and saw suspected drug paraphernalia inside the vehicle. Law enforcement recognized the driver as Luis ORTIZ and the passenger as Renee PHAIR. Both ORTIZ and PHAIR consented to a search of their vehicle, and a small quantity of suspected methamphetamine was located in the vehicle.

### KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

148.    Based upon my training and experience, and my discussions with other experienced officers and agents experienced in drug and money laundering investigations, I know the following:

      a.    During the execution of search warrants, it is common to find papers, letters, billings, documents, and other writings that show ownership, dominion, and control of vehicles, residences, and/or storage units.

      b.    It is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their vehicles, residences, and/or storage units for their ready access and to conceal them from law enforcement.

      c.    Narcotics traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale, and distribution of controlled substances. Narcotics traffickers commonly "front," that is, provide on consignment, controlled substances to their clients. These books, records, receipts, notes, and ledgers, commonly known as "pay and owe sheets," are maintained where traffickers have ready access to them.

Affidavit of TFO VandenBos - 43
USAO# 2022R01285

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

d.      Traffickers of controlled substances, and those who assist them, maintain and tend to retain accounts or records of their drug trafficking activities, including lists of drug quantities and money owed, telephone records including contact names and numbers, photographs, and similar records of evidentiary value. These items are generally kept in locations where drug traffickers believe their property is secure and will remain undetected from law enforcement, such as inside their homes and vehicles. Sometimes, these locations are not their primary residence, but instead used for the purposes of storing and distributing drugs.

e.      Traffickers of controlled substances commonly maintain records reflecting names or nicknames, addresses, vehicles, and/or telephone numbers of their suppliers, customers and associates in the trafficking organization. Traffickers commonly maintain this information in books or papers as well as in cellular telephones and other electronic devices. Traffickers often maintain cellular telephones for ready access to their clientele and to maintain their ongoing narcotics business. Traffickers frequently change their cellular telephone numbers to avoid detection by law enforcement, and it is common for traffickers to use more than one cellular telephone at any one time.

f.      Traffickers maintain evidence of their criminal activity at locations that are convenient to them, including their residences and vehicles. This evidence often includes more than contraband and paraphernalia and includes financial records, records of property and vehicle ownership, records of property rented, records of storage facilities used to hide drugs or currency, and other documentary evidence relating to commission of, and proceeds from, their crimes. Narcotics traffickers sometimes take or cause to be taken photographs and/or video recordings of themselves, their associates, their property, and their illegal product, or have photo or video security systems that record images from their homes or property. These individuals usually maintain these photographs and recordings in their possession or at their premises, in a safe place. Such evidence may be kept at a safe

location for a long time after the drug deal(s) to which they pertain are completed, if the location remains under the control of the trafficker.

g.   Traffickers frequently maintain items necessary for weighing, packaging, and cutting drugs for distribution. This paraphernalia often includes, but is not limited to, scales, plastic bags and other packaging materials, sifters, containers, and cutting/diluting agents and items to mask the odor of narcotics. Persons trafficking and using controlled substances frequently sell more than one type of controlled substance at any one time.

h.   It is common for drug dealers to also be users of their product, and it is common for drug users to maintain paraphernalia associated with the use of controlled substances, such as syringes, pipes, spoons, containers, straws, and razor blades.

i.   Traffickers frequently maintain records, books, notes, ledgers, travel documents, and other papers relating to the transportation and distribution of controlled substances in locations convenient to them, such as their residences and vehicles.

j.   Traffickers often maintain weapons, including firearms and ammunition, in secure locations such as their residences and vehicles, in order to protect their drugs and drug proceeds.

k.   Traffickers often have false identification documents and identification documents in the names of others. Traffickers very often place assets in names other than their own, or use fictitious names and identification, to avoid detection of these assets by government agencies, while continuing to use these assets and exercise dominion and control over them.

l.   Drug trafficking is a cash business, often involving large amounts of cash at any one time, so drug traffickers often have money counters.

m.   A common method that drug traffickers use to distribute drugs is through the use of passenger vehicles. Similarly, the proceeds of the sales of drugs are sometimes transported back in the same manner. Vehicles used by drug traffickers are often

Affidavit of TFO VandenBos - 45
USAO# 2022R01285

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

placed in fictitious or nominee names, and outfitted with concealed compartments where the drugs and drug proceeds can be hidden to lessen the likelihood of interdiction.

n.      Persons involved in drug trafficking conceal in their residences caches of drugs, large amounts of currency, financial instructions, precious metals, jewelry, and other items of value and/or proceeds of drug transactions as well as evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money made from engaging in narcotics trafficking activities.

o.      Unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

p.      Illegal drug trafficking is a continuing activity over months and even years. Illegal drug traffickers will repeatedly obtain and distribute controlled substances on a somewhat regular basis, much as any distributor of a legitimate commodity would purchase stock for sale, and, similarly, drug traffickers will have an "inventory," which fluctuates in size depending upon various factors, including the demand and supply for the product. I would expect the trafficker to keep records of their illegal activities for a period of time extending beyond the time during which they actually possess illegal controlled substances, in order that they can maintain contact with his criminal associates for future drug transactions, and so that they can have records of prior transactions for which, for example, they might still be owed money, or might owe someone else money. These records are often created in code.

q.      Drug trafficking is a cash business, and in order to escape notice from authorities for using unexplained income, or hide excessive cash from illegal activities, traffickers either keep large quantities of cash at home or other secure locations, such as safe deposit boxes, or convert the cash into other valuable assets, such as jewelry, precious metals, monetary instruments, or other negotiable forms of wealth. Records of such conversions are often stored where a trafficker lives or in other secure locations such as safe deposit boxes.

Affidavit of TFO VandenBos - 46
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

r.      Money launderers often have banking records to include, but not limited to, deposit or withdrawal slips, bank statements, checks, or money orders. These items can be found in residences, vehicles, storage units, cellular phones, digital devices, among other locations. Some of these banking records may not be in their own name. Money launderers often have several accounts documented in some form, or instructions detailing how to handle each respective account. For example, they may have a list of accounts belonging to several different people with instructions for how much to deposit or withdraw from each and often maintain this information for long periods of time in their residences or safe deposit boxes.

s.      Money launderers often have records or evidence related to how the proceeds were spent or concealed and often maintain this information for long periods of time in their residences or safe deposit boxes. Evidence may include jewelry and/or vehicles, as well as the contents of storage lockers, safe deposit boxes or bank accounts. The use of bank accounts is a common money movement technique used by drug traffickers to receive payment for narcotics from customers outside of their geographic region. It is common for a trafficker to use several bank accounts for this purpose simultaneously in an attempt to avoid detection by the financial institutions and/or law enforcement. The use of multiple accounts, and the commingling of illicit funds with legitimate funds in particular, is often part of the plan to conceal the illegal activity or may be part of the overall integration mechanism by which the illicit funds are made to appear as part of the legitimate income so that only a small portion of or even none of the funds from an account are seized.

t.      I know from my training and experience that Mexico-based DTOs frequently use various wire-remitter services and multiple senders to transfer money in relatively small increments to multiple recipients. DTOs employ such tactics in an effort to avoid triggering mandatory financial-reporting requirements of the wire-remitter operators and to avoid law enforcement detection. I also know from my training and

AFFIDAVIT OF TFO VANDENBOS - 47
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  experience that Mexico-based DTOs often use such wire transfers in order to quickly move
2  a small portion of drug proceeds out of the United States and into the possession of DTO
3  operatives and leadership in Mexico, with the bulk of the cash drug proceeds to follow
4  later.

5          u.    Based on my training and experience, I know that international money
6  transfers among DTO members can be made through various digital money transfer
7  services utilizing internet-connected digital devices such as desktop and laptop computers.
8  In addition, those digital devices can be used by DTO members to access, store, send, and
9  receive records related to such international money transfers. Accordingly, internet-
10 connected digital devices owned or used by DTO members could harbor evidence of
11 money laundering.

12         149.   Based on my training and experience, and that of other investigators I have
13 talked to, I also know that drug dealers use cellular telephones as a tool or instrumentality
14 in committing their criminal activity, to include laundering their proceeds. They use them
15 to maintain contact with their suppliers, distributors, and customers. They prefer cellular
16 telephones because, first, they can be purchased without the location and personal
17 information that land lines require. Second, they can be easily carried to permit the user
18 maximum flexibility in meeting associates, avoiding police surveillance, and traveling to
19 obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy
20 to allow substitution when one member leaves the area temporarily. Since cellular phone
21 use became widespread, every drug dealer I have contacted has used one or more cellular
22 telephones for his or her drug business. I also know that it is common for drug traffickers
23 to retain in their possession phones that they previously used, but have discontinued
24 actively using, for their drug trafficking business. These items may be kept for months and
25 months in a safe place controlled by the drug trafficker. Based on my training and
26 experience, the data maintained in a cellular telephone used by a drug dealer is evidence of
27 a crime or crimes. This includes the following:

AFFIDAVIT OF TFO VANDENBOS - 48
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a.  The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source.

b.  The stored list of recent received, missed, and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors, and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

c.  Stored text messages are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

d.  Drug traffickers increasingly use applications on smart phones that encrypt communications such as WhatsApp, or applications that automatically delete messages, such as Snapchat, in order to avoid law enforcement monitoring or recording of communications regarding drug trafficking and/or money laundering. Evidence of the use

AFFIDAVIT OF TFO VANDENBOS - 49
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  of such applications can be obtained from smart phones, and is evidence of a smart phone

2  user's efforts to avoid law enforcement detection.

3        e.     Photographs on a cellular telephone are evidence because they

4  help identify the user, either through his or her own picture, or through pictures of friends,

5  family, and associates that can identify the user. Pictures also identify associates likely to

6  be members of the drug trafficking organization. Some drug dealers photograph groups of

7  associates, sometimes posing with weapons and showing identifiable gang signs. Also,

8  digital photos often have embedded "geocode" or GPS information embedded in them.

9  Geocode information is typically the longitude and latitude where the photo was taken.

10  Showing where the photo was taken can have evidentiary value. This location information

11  is helpful because, for example, it can show where coconspirators meet, where they travel,

12  and where assets might be located.

13        f.     Stored address records are important evidence because they

14  show the user's close associates and family members, and they contain names and

15  nicknames connected to phone numbers that can be used to identify suspects.

16  **TECHNICAL TERMS**

17      150.   Based on my training and experience, I use the following technical terms to

18  convey the following meanings:

19        a.     IP Address: The Internet Protocol address (or simply "IP address") is

20  a unique numeric address used by computers on the Internet. An IP address looks like a

21  series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).

22  Every digital device attached to the Internet must be assigned an IP address so that Internet

23  traffic sent from and directed to that digital device may be directed properly from its source

24  to its destination. Most Internet service providers control a range of IP addresses. Some

25  computers have static-that is, long-term-IP addresses, while other computers have

26  dynamic-that is, frequently changed-IP addresses.

27        b.     Internet: The Internet is a global network of computers and other

AFFIDAVIT of TFO VANDENBOS - 50
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c.    Electronic Storage media: Electronic Storage media is any physical object upon which data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

151.    As described above and in Attachment B, this application seeks permission to search for evidence, fruits, and/or instrumentalities that might be found at the Subject Premises or in the Subject Vehicle, in whatever form they are found. One form in which the evidence, fruits, and/or instrumentalities might be found is data stored on digital devices[17] such as computer hard drives or other electronic storage media.[18] Thus, the warrant applied for would authorize the seizure of digital devices or other electronic storage media or, potentially, the copying of electronically stored information from digital devices or other electronic storage media, all under Rule 41(e)(2)(B).

152.    *Probable cause.* Based upon my review of the evidence gathered in this investigation, my review of data and records, information received from other agents and computer forensics examiners, and my training and experience, I submit that if a digital device or other electronic storage media is found at the Subject Premises or within the

---

[17] "Digital device" includes any device capable of processing and/or storing data in electronic form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet computers, computer servers, peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media, related communications devices such as modems, routers and switches, and electronic/digital security devices, wireless communication devices such as mobile or cellular telephones and telephone paging devices, personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital cameras, digital gaming devices, global positioning satellite devices (GPS), or portable media players

[18] Electronic Storage media is any physical object upon which electronically stored information can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

AFFIDAVIT OF TFO VANDENBOS - 51
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Subject Vehicle, there is probable cause to believe that evidence, fruits, and/or instrumentalities of the crimes of Title 21, United States Code, Section 841(a)(1); conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and/or laundering of, or conspiracy to launder, monetary instruments in violation of Title 18, United States Code, Sections 1956(a) and (h), will be stored on those digital devices or other electronic storage media. Specifically, I believe digital devices, including cellular telephones, are being used to coordinate and conduct drug trafficking transactions as detailed throughout this affidavit. I further believe that targets of this investigation are using social media platforms, including Facebook, to conduct these transactions. As discussed herein, investigators believe that drug trafficking transactions are being directed by Mexico-based coconspirators and executed by Washington-based runners. All the controlled purchases of narcotics conducted in this investigation have been completed by using a digital device to communicate with the targets of this investigation. There is, therefore, probable cause to believe that evidence, fruits and/or instrumentalities of the crimes of Title 21, United States Code, Section 841(a)(1); conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and/or laundering of, or conspiracy to launder, monetary instruments in violation of Title 18, United States Code, Sections 1956(a) and (h), exists and will be found on digital device or other electronic storage media at the Subject Premises or within the Subject Vehicle, for at least the following reasons:

a.      Based my knowledge, training, and experience, I know that computer files or remnants of such files may be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, this information can sometimes be recovered months or years later with forensics tools. This is because when a person "deletes" a file on a computer, the data contained in the files does not actually disappear; rather, that data remains on the storage

AFFIDAVIT OF TFO VANDENBOS - 52
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    medium until it is overwritten by new data.

2         b.    Therefore, deleted files, or remnants of deleted files, may reside in
3    free space or slack space—that is, in space on the storage medium that is not currently
4    being used by an active file—for long periods of time before they are overwritten. In
5    addition, a computer's operating system may also keep a record of deleted data in "swap"
6    or "recovery" files.

7         c.    Wholly apart from user-generated files, computer storage media—in
8    particular, computers' internal hard drives—contain electronic evidence of how a computer
9    has been used, what it has been used for, and who has used it. To give a few examples, this
10   forensic evidence can take the form of operating system configurations, artifacts from
11   operating system or application operation, file system data structures, and virtual memory
12   "swap" paging files. Computer users typically do not erase or delete this evidence, because
13   special software is typically required for that task. However, it is technically possible to
14   delete this information.

15        d.    Similarly, files that have been viewed via the Internet are sometimes
16   automatically downloaded into a temporary Internet directory or "cache."

17        153.   *Forensic evidence.* As further described in Attachment B, this application
18   seeks permission to locate not only computer files that might serve as direct evidence of
19   the crimes described on the warrant, but also for forensic electronic evidence that
20   establishes how digital devices or other electronic storage media were used, the purpose of
21   their use, who used them, and when. There is probable cause to believe that this forensic
22   electronic evidence will be on any digital devices or other electronic storage media located
23   at the Subject Premises or in the Subject Vehicle because:

24        a.    Stored data can provide evidence of a file that was once on the digital
25   device or other electronic storage media but has since been deleted or edited, or of a deleted
26   portion of a file (such as a paragraph that has been deleted from a word processing file).
27   Virtual memory paging systems can leave traces of information on the digital device or

AFFIDAVIT OF TFO VANDENBOS - 53
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

other electronic storage media that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the history of connections to other computers, the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the digital device or other electronic storage media was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

> b.    As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner and/or others with direct physical access to the computer. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage

Affidavit of TFO VandenBos - 54
USAO# 2022R01285

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1  media access, use, and events relating to the crime under investigation.[19] Additionally,

2  some information stored within a computer or electronic storage media may provide crucial

3  evidence relating to the physical location of other evidence and the suspect. For example,

4  images stored on a computer may both show a particular location and have geolocation

5  information incorporated into its file data. Such file data typically also contains information

6  indicating when the file or image was created. The existence of such image files, along

7  with external device connection logs, may also indicate the presence of additional

8  electronic storage media (e.g., a digital camera or cellular phone with an incorporated

9  camera). The geographic and timeline information described herein may either inculpate

10 or exculpate the computer user. Last, information stored within a computer may provide

11 relevant insight into the computer user's state of mind as it relates to the offense under

12 investigation. For example, information within the computer may indicate the owner's

13 motive and intent to commit a crime (e.g., internet searches indicating criminal planning),

14 or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the

15 computer or password protecting/encrypting such evidence in an effort to conceal it from

16 law enforcement).

17         c.    A person with appropriate familiarity with how a digital device or

18 other electronic storage media works can, after examining this forensic evidence in its

19 proper context, draw conclusions about how the digital device or other electronic storage

20 media were used, the purpose of their use, who used them, and when.

21         d.    The process of identifying the exact files, blocks, registry entries,

22 logs, or other forms of forensic evidence on a digital device or other electronic storage

23 media that are necessary to draw an accurate conclusion is a dynamic process. While it is

---

[19] For example, if the examination of a computer shows that: a) at 11:00am, someone using the computer used an internet browser to log into a bank account in the name of John Doe; b) at 11:02am the internet browser was used to download child pornography; and c) at 11:05 am the internet browser was used to log into a social media account in the name of John Doe, an investigator may reasonably draw an inference that John Doe downloaded child pornography.

AFFIDAVIT OF TFO VANDENBOS - 55
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

possible to specify in advance the records to be sought, digital evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a digital device or other electronic storage media was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

154.    Because of the nature of the evidence that I am attempting to obtain and the nature of the investigation, I have not made any prior efforts to obtain the evidence based on the consent of any party who may have authority to consent. I believe, based upon the nature of the investigation and the information I have received, that if targets become aware of the investigation in advance of the execution of a search warrant, they may attempt to destroy any potential evidence, whether digital or non-digital, thereby hindering law enforcement agents from the furtherance of the criminal investigation.

## REQUEST FOR AUTHORITY TO CONDUCT OFF-SITE SEARCH OF TARGET COMPUTERS

155.    *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of premises for information that might be stored on digital devices or other electronic storage media often requires the seizure of the physical items and later off-site review consistent with the warrant. In lieu of removing all of these items from the premises, it is sometimes possible to make an image copy of the data on the digital devices or other electronic storage media, onsite. Generally speaking, imaging is the taking of a complete electronic picture of the device's data, including all hidden sectors and deleted

1  files. Either seizure or imaging is often necessary to ensure the accuracy and completeness

2  of data recorded on the item, and to prevent the loss of the data either from accidental or

3  intentional destruction. This is true because of the following:

4        a.   *The time required for an examination*. As noted above, not all

5  evidence takes the form of documents and files that can be easily viewed on site. Analyzing

6  evidence of how a computer has been used, what it has been used for, and who has used it

7  requires considerable time, and taking that much time on premises could be unreasonable.

8  As explained above, because the warrant calls for forensic electronic evidence, it is

9  exceedingly likely that it will be necessary to thoroughly examine the respective digital

10  device and/or electronic storage media to obtain evidence. Computer hard drives, digital

11  devices and electronic storage media can store a large volume of information. Reviewing

12  that information for things described in the warrant can take weeks or months, depending

13  on the volume of data stored, and would be impractical and invasive to attempt on-site.

14        b.   *Technical requirements*. Digital devices or other electronic storage

15  media can be configured in several different ways, featuring a variety of different operating

16  systems, application software, and configurations. Therefore, searching them sometimes

17  requires tools or knowledge that might not be present on the search site. The vast array of

18  computer hardware and software available makes it difficult to know before a search what

19  tools or knowledge will be required to analyze the system and its data on the premises.

20  However, taking the items off-site and reviewing them in a controlled environment will

21  allow examination with the proper tools and knowledge.

22        c.   *Variety of forms of electronic media*. Records sought under this

23  warrant could be stored in a variety of electronic storage media formats and on a variety of

24  digital devices that may require off-site reviewing with specialized forensic tools.

25                **SEARCH TECHNIQUES**

26       156.   Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal

27  Rules of Criminal Procedure, the warrant I am applying for will permit seizing, imaging,

or otherwise copying digital devices or other electronic storage media that reasonably appear capable of containing some or all of the data or items that fall within the scope of Attachment B to this Affidavit, and will specifically authorize a later review of the media or information consistent with the warrant.

157.    Because several people share the Subject Premises as a residence, it is possible that the Subject Premises will contain digital devices or other electronic storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If agents conducting the search nonetheless determine that it is possible that the things described in this warrant could be found on those computers, this application seeks permission to search and if necessary to seize those computers as well. It may be impossible to determine, on scene, which computers contain the things described in this warrant.

158.    Consistent with the above, I hereby request the Court's permission to seize and/or obtain a forensic image of digital devices or other electronic storage media that reasonably appear capable of containing data or items that fall within the scope of Attachment B to this Affidavit, and to conduct off-site searches of the digital devices or other electronic storage media and/or forensic images, using the following procedures:

a.    *Processing the Search Sites and Securing the Data.*

i.    Upon securing the physical search site, the search team will conduct an initial review of any digital devices or other electronic storage media located at the subject premises or in subject vehicle described in Attachments A1-A7 that are capable of containing data or items that fall within the scope of Attachment B to this Affidavit, to determine if it is possible to secure the data contained on these devices onsite in a reasonable amount of time and without jeopardizing the ability to accurately preserve the data.

ii.    In order to examine the electronically stored information ("ESI") in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate,

AFFIDAVIT OF TFO VANDENBOS - 58
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  of any digital device or other electronic storage media that is capable of containing data or

2  items that fall within the scope of Attachment B to this Affidavit.[20]

3             iii.    A forensic image may be created of either a physical drive or a

4  logical drive. A physical drive is the actual physical hard drive that may be found in a

5  typical computer. When law enforcement creates a forensic image of a physical drive, the

6  image will contain every bit and byte on the physical drive. A logical drive, also known as

7  a partition, is a dedicated area on a physical drive that may have a drive letter assigned (for

8  example the c: and d: drives on a computer that actually contains only one physical hard

9  drive). Therefore, creating an image of a logical drive does not include every bit and byte

10 on the physical drive. Law enforcement will only create an image of physical or logical

11 drives physically present on or within the subject device. Creating an image of the devices

12 located at the search locations described in Attachments A1-A7 will not result in access to

13 any data physically located elsewhere. However, digital devices or other electronic storage

14 media at the search locations described in Attachments A1-A7 that have previously

15 connected to devices at other locations may contain data from those other locations.

16             iv.    If based on their training and experience, and the resources

17 available to them at the search site, the search team determines it is not practical to make

18 an on-site image within a reasonable amount of time and without jeopardizing the ability

19 to accurately preserve the data, then the digital devices or other electronic storage media

20

21

---

22 [20] The purpose of using specially trained computer forensic examiners to conduct the imaging of

23 digital devices or other electronic storage media is to ensure the integrity of the evidence and to
   follow proper, forensically sound, scientific procedures. When the investigative agent is a trained

24 computer forensic examiner, it is not always necessary to separate these duties. Computer forensic
   examiners often work closely with investigative personnel to assist investigators in their search for

25 digital evidence. Computer forensic examiners are needed because they generally have
   technological expertise that investigative agents do not possess. Computer forensic examiners,

26 however, often lack the factual and investigative expertise that an investigative agent may possess
   on any given case. Therefore, it is often important that computer forensic examiners and

27 investigative personnel work closely together.

AFFIDAVIT of TFO VANDENBOS - 59
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

will be seized and transported to an appropriate law enforcement laboratory to be forensically imaged and reviewed.

            b.    *Searching the Forensic Images.*

            i.    Searching the forensic images for the items described in Attachment B may require a range of data analysis techniques. In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant. The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to this affidavit. Those techniques, however, may necessarily expose many or all parts of a hard drive to human inspection in order to determine whether it contains evidence described by the warrant.

## REQUEST FOR SEALING

159.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application, affidavit and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation and disclosure of the search warrant, this affidavit, and/or this application and the attachments thereto will jeopardize the progress of the investigation. Disclosure of these materials would give the target of the investigation an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee from prosecution.

## CONCLUSION

160.    Based on the information set forth herein, there is probable cause to search the above described Target Locations and Target Vehicle, as further described in

Affidavit of TFO VandenBos - 60
USAO# 2022R01285

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1  Attachments A1-A7, for evidence, fruits and instrumentalities, as further described in

2  Attachment B, of crimes committed by the individuals listed in this affidavit and their

3  coconspirators, specifically distribution of, and possession with intent to distribute,

4  controlled substances, in violation of Title 21, United States Code, Section 841(a)(1);

5  conspiracy to distribute controlled substances, in violation of Title 21, United States Code,

6  Sections 841(a)(1) and 846; and/or laundering of, or conspiracy to launder, monetary

7  instruments in violation of Title 18, United States Code, Sections 1956(a) and (h).

8

9

10  _____
    CHRISTOPHER L. VANDENBOS

11  Task Force Officer
    Drug Enforcement Administration

12

13      The above-named agent provided a sworn statement attesting to the truth of the

14  contents of the foregoing affidavit on the 14th day of July, 2023.

15

16

17  _____
    BRIAN A. TSUCHIDA

18  United States Magistrate Judge

19

20

21

22

23

24

25

26

27

AFFIDAVIT OF TFO VANDENBOS - 61
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**ATTACHMENT A1**

Location to be Searched

**Target Location 1 (TL1): 6069 Neevel Road, Ferndale, WA 98248**: Target Location 1 is located at 6069 Neevel Road, Ferndale, WA. Target Location 1 is a white travel trailer with thin dark stripes running laterally along the sides. There are two doors facing east. There is a green staircase leading to one of the doors.

The areas to be searched includes all areas at that location where the Items to Be Seized, listed in Attachment B, could be found. This includes all areas within and surrounding the primary residence/location, including all rooms, attics, crawlspaces, basements, storage areas, containers, surrounding grounds, garages, carports and associated parking stalls, trash areas/containers, outbuilding, patios, balconies, yards, secure locations (such as safes), vehicles located on or in the premises, and any persons located within said property or within the residence/location.



ATTACHMENT A1 - 1
USAO# 2022R01285

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

**ATTACHMENT A2**

Location to be Searched

**Target Location 2 (TL2): 1401 Woodstock Way, Unit #102H, Bellingham, WA 98226**: Target Location 2 is an apartment labeled #102H, located at 1401 Woodstock Way, Bellingham, WA. Target Location 2 is located within a multi-unit residential complex that is tan in color with white trim. The door for unit 102-H is located on the south side of the residential complex, facing south. Unit 102-H is located on the first floor and the numbers reading "102-H" are affixed to the door. The door is white in color. There is an affixed Patio with a white railing on the north side of the complex for unit 102-H.

The areas to be searched includes all areas at that location where the Items to Be Seized, listed in Attachment B, could be found. This includes all areas within and surrounding the primary residence/location, including all rooms, attics, crawlspaces, basements, storage areas, containers, surrounding grounds, garages, carports and associated parking stalls, trash areas/containers, outbuilding, patios, balconies, yards, secure locations (such as safes), vehicles located on or in the premises, and any persons located within said property or within the residence/location.

17

18

19

20

21

22

23

24

25

26

27



**ATTACHMENT A3**

Location to be Searched

**Target Location 3 (TL3): 966 E. 69th Vista, Apt. 7, Lynden, WA 98264**: Target Location 3 is located at 966 E. 69th Vista, Apt. 7, Lynden, WA. Target Location 3 is a one-story single-family residence. The residence is tan in color with white trim, and composite roof. The residence appears to have a covered front door/entrance on the west side of the residence. The residence has a driveway, with access from the south, off E. 69th Vista. The number "7" is affixed to the south side of the residence in two separate locations, are both black in color, and visible from the driveway.

The areas to be searched includes all areas at that location where the Items to Be Seized, listed in Attachment B, could be found. This includes all areas within and surrounding the primary residence/location, including all rooms, attics, crawlspaces, basements, storage areas, containers, surrounding grounds, garages, carports and associated parking stalls, trash areas/containers, outbuilding, patios, balconies, yards, secure locations (such as safes), vehicles located on or in the premises, and any persons located within said property or within the residence/location.



ATTACHMENT A3 - 1
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

## ATTACHMENT A4

Location to be Searched

**Target Location 4 (TL4): 4238 Northwest Drive, Bellingham, WA 98226:**
Target Location 4 is located at 4238 Northwest Drive, Bellingham, WA. Target Location 4 is a one-story single-family residence, with what appears to be an unattached outbuilding to the north. The residence is grey in color with white trim, and composite roof. The residence has a covered front door/entrance located on the west side of the residence. The residence has a driveway with access from the east side of Northwest Drive. The numbers "4238" are affixed to the front of the actual residence, on the west side, and visible from the driveway as you enter the property. The numbers "4238" are white in color.

The areas to be searched includes all areas at that location where the Items to Be Seized, listed in Attachment B, could be found. This includes all areas within and surrounding the primary residence/location, including all rooms, attics, crawlspaces, basements, storage areas, containers, surrounding grounds, garages, carports and associated parking stalls, trash areas/containers, outbuilding, patios, balconies, yards, secure locations (such as safes), vehicles located on or in the premises, and any persons located within said property or within the residence/location.



ATTACHMENT A4 - 1
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

**ATTACHMENT A5**

Location to be Searched

**Target Location 5 (TL5): 2412 Rimland Drive, Apt. 410, Bellingham, WA 98226:** Target Location 5 is located at 2412 Rimland Drive, Apt. 410, Bellingham, WA. Target Location 5 is a fourth-floor apartment located within the Trailview Apartment building, located at 2412 Rimland Drive, Bellingham, WA. Target Location 5 is an apartment assigned number 410. There is a placard affixed to the left side of the front door that reads "410" in vertically descending numbers. The door front door has a grey metal door handle on the left side of the door.

The areas to be searched includes all areas at that location where the Items to Be Seized, listed in Attachment B, could be found. This includes all areas within and surrounding the primary residence/location, including all rooms, attics, crawlspaces, basements, storage areas, containers, surrounding grounds, garages, carports and associated parking stalls, trash areas/containers, outbuilding, patios, balconies, yards, secure locations (such as safes), vehicles located on or in the premises, and any persons located within said property or within the residence/location.



ATTACHMENT A5 - 1
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**ATTACHMENT A6**

Location to be Searched

**Target Location 6 (TL6): 1820 East Pole Road, Everson, WA 98247:** Target Location 6 is located at 1820 East Pole Road, Everson, WA. Target Location 6 is a property located at 1820 East Pole Road, Everson, WA. According to the Whatcom County Assessor website, the parcel number is 3903021580280000. There is a single-story residence on the property with brown siding. On the south side of the residence, there are white numbers showing "1820" affixed to the siding. There is a shop on the property with green metal siding and a green door. There are multiple trailers and vehicles within the boundary of the property.

The areas to be searched includes all areas at that location where the Items to Be Seized, listed in Attachment B, could be found. This includes all areas within and surrounding the primary residence/location, including all rooms, attics, crawlspaces, basements, storage areas, containers, surrounding grounds, garages, carports and associated parking stalls, trash areas/containers, outbuilding, patios, balconies, yards, secure locations (such as safes), vehicles located on or in the premises, and any persons located within said property or within the residence/location.



ATTACHMENT A6 - 1
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



ATTACHMENT A6 - 2
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**ATTACHMENT A7**

2

Vehicle to be Searched

3     **Target Vehicle 3 (TV3): A blue 2006 Chevrolet Cobalt:** Target Vehicle 3 is a

4 2006 Chevrolet Cobalt, with Vehicle Identification Number (VIN) 1G1AK15F967805540.

5     The areas to be searched includes all areas at that location where the Items to Be

6 Seized, listed in Attachment B, could be found. This includes all areas of the vehicle, all

7 compartments, and all containers within that vehicle, whether locked or not.

8     [21]



9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25 ――――――――――――

26 [21] The photograph depicts Target Vehicle 3 bearing a previous license plate. According to

27 Washington DOL records, as of July 13, 2023, the license plate associated with this vehicle was
CHH1986.

ATTACHMENT A7 - 1
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT B

Items to be Seized

This warrant authorizes the government to search for the following evidence, fruits, and/or instrumentalities of Distribution and/or Possession of Controlled Substances with Intent to Distribute in violation of Title 21, United States Code, Section 841(a)(1); conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and/or laundering of, or conspiracy to launder, monetary instruments in violation of Title 18, United States Code, Sections 1956(a) and (h):

1.      Controlled Substances and controlled substance analogues.

2.      Drug Paraphernalia and Instruments of Drug Trafficking: Items used, or to be used, to store, process, package, use, and/or distribute controlled substances; plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances.

3.      Drug Transaction Records: Documents such as ledgers, receipts, and notes relating to the acquisition, transportation, and distribution of controlled substances, however stored, including in digital devices.

4.      Customer and Supplier Information: Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, and maps or directions.

5.      Cash and Financial Records: Currency and financial records, such as bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, and vehicle documents; records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, and cashier's checks.

6.      Photographs/Video: Photographs, video tapes, digital cameras, surveillance cameras, and associated hardware/storage devices depicting property occupants, friends and relatives of the property occupants, or suspected buyers or sellers of controlled

ATTACHMENT B - 1
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

substances, controlled substances or other contraband, weapons, and assets derived from the distribution of controlled substances.

7.      Weapons, including firearms, magazines, ammunition, and body armor.

8.      Codes: Evidence of codes used in the distribution of controlled substances, such as passwords, code books, cypher or decryption keys.

9.      Property Records: Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the Subject Premises, and similar records of other property owned or rented.

10.     Indicia of occupancy, residency, and/or ownership of assets such as utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, and mortgage statements.

11.     Evidence of storage unit rental or access such as rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, and passwords.

12.     Evidence of Personal Property Ownership: Registration information, ownership documents, or other evidence of ownership of personal property such as vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and jewelry; evidence of international or domestic travel, hotel stays, and other evidence of unexplained wealth.

13.     Individual and business financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:

a.      Employment records: paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.

b.      Savings accounts: statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.

c.      Checking accounts: statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.

ATTACHMENT B - 2
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

   d. Loan Accounts: financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.

   e. Collection account statements and other-related records.

   f. Certificates of deposit: applications, purchase documents, and statements of accounts.

   g. Credit card accounts: credit cards, monthly statements, and receipts of use.

   h. Receipts and records related to gambling wins and losses, or any other contest winnings.

   i. Insurance: policies, statements, bills, and claim-related documents.

   j. Financial records: profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

14. All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

15. All Western Union and/or Money Gram documents and other financial documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash, including applications, payment records, money orders, and frequent customer cards.

16. Negotiable instruments, jewelry, precious metals, and financial instruments.

17. Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency.

18. Correspondence, papers, records, and any other items showing employment or lack of employment.

ATTACHMENT B - 3
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

19.   Phone books, address books, any papers or documents reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists; telephone answering devices that record telephone conversations and the tapes therein for messages left for or by co-conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds.

20.   Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

21.   Tools that may be used to open hidden compartments in vehicles, such as paint, bonding agents, magnets, or other items that may be used to open/close said compartments.

22.   Digital computing devices, e.g., desktop and laptop computers and table devices; digital storage devices, e.g., external hard drives and USB thumb drives, and; optical and magnetic storage media, e.g., Blue Ray discs, DVDs and CDs.

23.   Pill press machine, encapsulating machine, and other tools or equipment used to manufacture pills.

24.   Cell Phones and other digital communication devices for evidence, fruits, and/or instrumentalities of the above-referenced crimes, specifically:

a.   Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

b.   Stored list of recent received, sent, or missed calls;

c.   Stored contact information;

d.   Stored photographs and videos of narcotics, currency, financial records (such as deposit slips and other bank records), RVs and other vehicles, firearms or other weapons, evidence of the aforementioned crimes of investigation, and/or that may show the user of the phone and/or coconspirators, including any embedded GPS data

ATTACHMENT B - 4
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  associated with these photographs; and

2         e.    Stored text messages that are evidence of the above-listed federal

3  crimes or that may identify the user of the seized phones and/or coconspirators, including

4  messages sent via messaging apps, including Wickr, Signal, WhatsApp, and Telegram, or

5  other similar messaging services where the data is stored on the telephone.

6      This warrant authorizes a review of electronic storage media and electronically

7  stored information seized or copied pursuant to this warrant in order to locate evidence,

8  fruits, and instrumentalities described in this warrant. The review of this electronic data

9  may be conducted by any government personnel assisting in the investigation, who may

10 include, in addition to law enforcement officers and agents: attorneys for the government,

11 attorney support staff, and technical experts. Pursuant to this warrant, DEA may deliver a

12 complete copy of the seized or copied electronic data to the custody and control of attorneys

13 for the government and their support staff for their independent review.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

ATTACHMENT B - 5
USAO# 2022R01285

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970